**WESTERN–SOUTHERN LIFE INSURANCE COMPANY, Appellee,**

v.

**FRIDLEY, Appellant; Ohio Bureau of Employment Services.**

[Cite as *Western–Southern Life Ins. Co. v. Fridley* (1990), 69 Ohio App.3d 190.]

Court of Appeals of Ohio,
Hamilton County.

No. C–890338.

Decided Aug. 22, 1990.

*Alice M. Fitzgerald,* for appellee.

*Jeri J. Simmons,* for appellant.

*Per Curiam.*

Defendant-appellant, Danny J. Fridley, appeals from the trial court's order setting aside the determination of the Unemployment Compensation Board of Review approving his application for unemployment benefits. In his assignment of error, Fridley argues that: (1) the trial court abused its discretion in reversing the administrative determination that his employer, the Western–Southern Life Insurance Company ("Western–Southern"), discharged him without just cause, and (2) the trial court used an unlawful standard of review to determine just cause. We find that neither assignment has merit.

Western–Southern's business is selling life insurance. Fridley, a nine-year employee at the time of his discharge, was its district sales manager assigned to the Cincinnati–East office. He was employed in that capacity pursuant to an agreement dated July 1, 1985. Between October 1986 and February 1987, Fridley carried on an extramarital sexual affair with Mallien Walker Cobb, whom he hired in September 1986 as a Western–Southern sales representative. Fridley admitted that he had sexual relations with Cobb on four different occasions while he was her supervisor. On June 17, 1987, Cobb told her immediate sales manager that she was quitting because she could not take any more sexual harassment from Fridley. Fridley, who knew why she quit,

concealed the reasons from his superiors, but on August 3, 1987, upon learning of Fridley's conduct with Cobb, Western–Southern discharged him.

The Administrator of the Ohio Bureau of Employment Services approved Fridley's September 3, 1987 application for unemployment compensation benefits. The Administrator's decision was affirmed following a request for reconsideration, and Western–Southern appealed to the Board of Review. The board's referee conducted a hearing and affirmed the Administrator's decision finding that the evidence did not establish either sexual harassment or the sort of immoral conduct that would have had a detrimental effect on Fridley's work for Western–Southern. After the board denied Western–Southern's application to institute further appeal, the latter appealed to the court of common pleas. The trial court agreed that the evidence did not establish sexual harassment, but reversed as unreasonable and unlawful the referee's decision holding that Fridley's conduct did not violate his employment contract on grounds of immoral conduct.

Contending that the trial court abused its discretion by reversing the board's determination, Fridley asserts that his conduct neither violated his contract nor constituted "just cause" for his discharge within the meaning of R.C. 4141.29(D)(2)(a). Since both assignments of error overlap, we have combined them for discussion.

■ The term "just cause" is not defined in R.C. Chapter 4141. Instead, what constitutes "just cause" is a question of fact to be decided upon the merits of a case-by-case analysis. *Irvine v. Unemployment Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 19 OBR 12, 482 N.E.2d 587. Traditionally, "just cause" is " 'that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' " *Id.* at 17, 19 OBR at 15, 482 N.E.2d at 589, citing *Peyton v. Sun T.V.* (1975), 44 Ohio App.2d 10, 12, 73 O.O.2d 8, 9, 335 N.E.2d 751, 752. Since the Ohio Unemployment Compensation Act is remedial legislation, any determination of "just cause" must be liberally construed in favor of the legislative purpose "to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own." *Salzl v. Gibson Greeting Cards* (1980), 61 Ohio St.2d 35, 39, 15 O.O.3d 49, 52, 399 N.E.2d 76, 79.

■ Fridley's contract provided for termination for cause if his acts "when occurring on Company premises or while performing Company-related duties * * * [included] * * * immoral conduct * * * [and] harassment of any kind, including sexual harassment." This same prohibition appeared in the Western–Southern Manager's Manual. Fridley's position is that his extramarital sexual activities did not occur on the premises or during company hours, and

were, therefore, not the type of "immoral conduct" contemplated by the termination clause of his contract. We disagree. Fridley was not merely engaged in a casual sexual affair with a consenting co-worker, as he argues, but rather, because of his supervisory position vis-a-vis Cobb, he was involved in a sexual relationship which made Western–Southern potentially liable under Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S.Code ("Title VII").

Two classes of sexual harassment are actionable under Title VII: (1) *quid pro quo* harassment where the employee's submission to or rejection of unwelcome sexual conduct is used as the basis for promotion or other employment decisions, and (2) hostile environment harassment where the relationship results in unreasonable interference with the employee's work performance or creates an intimidating or hostile work environment. When exercising delegated authority affecting the employment status of subordinates, a supervisor is not automatically deemed the agent of the employer. However, lack of notice of a supervisor's conduct does not necessarily insulate the employer against liability under Title VII if the employer has either not developed complaint procedures or failed to react under existing procedures upon allegations of sexual harassment. *Meritor Savings Bank v. Vinson* (1986), 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49.

That there existed potential liability under the circumstances was borne out on September 8, 1987, when Cobb's attorney notified Western–Southern that "Mr. Fridley harassed and intimidated Ms. Walker [Cobb] from September, 1986 through March, 1987," and offered to settle her alleged claim for $12,500. Because Fridley's actions had placed Western–Southern at the threshold of defending a hostile-environment, sexual-harassment claim, the trial court correctly concluded that his extramarital sexual relations with Cobb were, as a matter of law, work-related immoral conduct in violation of his contract constituting just cause for his termination as early as August 7, 1987, when the affair was first made known to Western–Southern.

Fridley correctly argues that credibility and weight of the evidence are generally matters for the referee, and that a reviewing court should not reverse the board's determination unless it was unlawful, unreasonable and against the manifest weight of the evidence. Cf. *Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St.2d 41, 45, 23 O.O.3d 57, 59, 430 N.E.2d 468, 471. There is a recognized exception, however, when the essential undisputed facts demonstrate that the referee's or the board's conclusions are unreasonable. *Opara v. Carnegie Textile Co.* (1985), 26 Ohio App.3d 103, 105–106, 26 OBR 312, 314–316, 498 N.E.2d 485, 489.

The trial court correctly applied this standard when it found that the uncontradicted facts in the record legitimately permitted Western–Southern to treat Fridley's conduct as a breach of his employment contract for work-related immoral conduct which was tantamount to just cause for his termination.

■ Fridley presents alternative issues within his assignments. He claims first that the term "immoral conduct" is imprecise and could not reasonably have been expected to place him on notice that, by engaging in consensual sexual relations with Cobb, he was putting his job in jeopardy. We rejected a similar argument in *Duncan v. Greenhills–Forest Park City School Dist. Bd. of Edn.* (Jan. 31, 1985), Hamilton App. No. C–840182, unreported, 1985 WL 9287, in which we concluded that, in a case involving termination of a tenured teacher's contract for "immorality," the ordinary meaning of the word "immorality" as used in R.C. 3319.16 presented no constitutional defect. Similarly, it is beyond cavil that an extramarital sexual affair is "immoral conduct" within the ordinary meaning of that phrase as used in Fridley's contract and the Western–Southern Manager's Manual.

■ Fridley next maintains that the only reason for discharge given to him by Western–Southern was "sexual harassment." He argues that his failure to receive timely notice of the "immoral conduct" charge invalidates it as a ground, or that, in the alternative, Western–Southern is estopped because of its delay in asserting this ground.[1] Although the employer's notice of appeal from the Administrator's "Reconsidered Decision" referred only to "acts of mismanagement, including, but not limited to, sexual harassment of a female co-worker," the employer offered testimony at the hearing that Fridley was told that he was discharged for "moral conduct [*sic* ] and sexual harassment." The record does not demonstrate that either claimant or his counsel objected or claimed surprise to either the referee or the trial court with respect to the introduction of [im]moral conduct as a ground for his dismissal. In fact, the claimant's brief in the trial court addressed the employer's assertion of immoral conduct. Under Ohio Adm.Code 4146–5–03,[2] the referee was entitled

---

1. Fridley's assertion of equitable estoppel applies to the actions of an agency of the state. Because of Ohio Adm.Code 4146–5–03, application of the rule that estoppel does not lie against the state in the exercise of a governmental function, as stated in *Sun Refining & Marketing Co. v. Brennan* (1987), 31 Ohio St.3d 306, 31 OBR 584, 511 N.E.2d 112, is unnecessary for this decision.

2. Ohio Adm.Code 4146–5–03 states:
   "Any issue within the jurisdiction of the Administrator concerning a decision on reconsideration from which appeal is taken, or upon referral of a case by the Administrator to the Board, shall be heard, considered and decided by the Board or the Referee to whom the case

to consider for the first time the issue of whether Fridley's breach of contract for "immoral conduct" constituted "just cause."

■ Finally, Fridley argues that he did not receive equal treatment by Western–Southern because it did not discharge other employees who were engaged in extramarital sexual affairs. This argument, which suggests that the employer's course of conduct altered his contract, is without merit. Even if we were to accept the truth of his claim, the record fails to demonstrate that any of those employees mentioned by Fridley were part of a supervisor-subordinate relationship.

The claimant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN, P.J., KLUSMEIER and GORMAN, JJ., concur.

is assigned for decision though not specifically (a) considered or referred to by the Administrator in his decision, (b) indicated in the appeal, or (c) raised by an interested party. Failure to include notice of an issue in the 'notice of hearing,' as provided in 4146–5–04(A), shall not preclude consideration of the issue on appeal, but if any interested party is surprised by a new issue, and unprepared to proceed, a continuance shall be granted."