TURNER ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* CENTRAL
LOCAL SCHOOL DISTRICT, APPELLEE AND CROSS-APPELLANT.

[Cite as *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95.]

(No. 97–2150—Submitted October 14, 1998 at the Mercer
County Session—Decided March 24, 1999.)

96

*Blumenstiel, Huhn, Wood & Adams* and *Mark A. Adams,* for appellants and cross-appellees.

*Weaner, Zimmerman, Bacon, Yoder & Hubbard Ltd.* and *Stanley J. Yoder,* for appellee and cross-appellant.

*Mark W. Ruf,* urging affirmance for *amicus curiae,* Ohio Academy of Trial Lawyers.

*Means, Bichimer, Burkholder & Baker Co., L.P.A., Kimball H. Carey, Katherine A. Francis* and *Matthew J. Markling,* urging reversal for *amicus curiae,* Ohio School Boards Association.

*Baumgartner & O'Toole, L.P.A.,* and *Daniel D. Mason,* urging reversal for *amici curiae,* Avon, Keystone, and Perkins Local School Districts.

---

FRANCIS E. SWEENEY, SR., J.    We are asked to determine, *inter alia,* the application of the Political Subdivision Tort Liability Act, R.C. Chapter 2744, to this action.   For the following reasons, we find that Central waived its right to assert the statutory immunity defense embraced within R.C. Chapter 2744 and reverse the court of appeals' judgment on this issue.   However, we affirm that part of the court of appeals' decision that found a question of fact as to whether the bus driver violated R.C. 4511.75(E).[1]

Statutory immunity is an affirmative defense, and if it is not raised in a timely fashion, it is waived.   *State ex rel. Koren v. Grogan* (1994), 68 Ohio St.3d 590, 594, 629 N.E.2d 446, 450;  Civ.R. 8(C);  Civ.R. 12(H).

---

1.   Appellants' propositions of law concerning the constitutionality of R.C. Chapter 2744 and the application of the immunity exceptions are rendered moot by our disposition of the case.

In *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 659 N.E.2d 1232, we were presented with the issue of whether a defendant who makes no attempt to introduce an affirmative defense (in that case primary assumption of the risk) as an issue before or during trial, but instead waits until after the jury returns a verdict in favor of the plaintiff, is precluded from relying on primary assumption of risk as a complete defense in a motion for judgment notwithstanding the verdict. In answering the question in the affirmative, we reasoned:

"Because primary assumption of risk, when applicable, prevents a plaintiff from establishing the duty element of a negligence case and so entitles a defendant to judgment as a matter of law, it is an issue especially amenable to resolution pursuant to a motion for summary judgment. Yet appellees never moved for summary judgment or attempted in any other way to call primary assumption of risk to the trial court's attention prior to trial. In most cases, when a defendant potentially has a full and complete defense available that would defeat a plaintiff's prima facie negligence case, one would expect that defendant to raise that defense as soon as possible in an attempt to prevail without going to trial. Although there is no suggestion in Civ.R. 56 that a party who fails to make a motion for summary judgment on a particular issue waives the right to raise the issue, judicial economy favors raising an issue on which the moving party claims entitlement to 'judgment as a matter of law,' Civ.R. 56(C), at the earliest practicable time." *Id.* at 433–434, 659 N.E.2d at 1238.

Although the facts in this case are somewhat different from those in *Gallagher* (the defendant in *Gallagher* did not file a motion for summary judgment and waited until after trial to raise the affirmative defense), we believe that the rationale in *Gallagher* is sound and extend its reasoning to the case before us.

Here, appellants sued Central for negligently causing the death of their child. Negligence was alleged, based upon the common law and various Administrative Code sections and Revised Code provisions. Central, a school district and thus a political subdivision, clearly had the right to rely upon the immunity provisions found in the Political Subdivision Tort Liability Act, R.C. Chapter 2744. See R.C. 2744.01(F). In fact, as a matter of course, a properly pleaded answer should have included the statutory-immunity defense. This is so because, in most cases, the Act could provide a complete defense to a negligence cause of action. However, Central failed to include this defense. If it intended to rely on statutory immunity, it had the responsibility to assert it in a timely fashion. It was perfectly reasonable for appellants to assume that in the absence of Central's failure to assert this defense, and its failure to argue this issue in its first motion for summary judgment, it intended to waive the defense. See *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 6, 12 OBR 1, 5, 465 N.E.2d 377, 381: "As a tactical

matter, the very possibility of waiver makes it extremely important and prudent, for both client and counsel, to plead all defenses as early as possible." Cf. *Hill v. Urbana* (1997), 79 Ohio St.3d 130, 141, 679 N.E.2d 1109, 1117 (Moyer, C.J., dissenting), citing *Gallagher*, 74 Ohio St.3d at 436, 659 N.E.2d at 1240, and *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 122, 679 N.E.2d 1099, 1104: "Parties, through their counsel, are responsible for shaping the trial through the issues they select for resolution; a trial court [and opposing counsel] cannot reasonably be expected to anticipate the existence of an argument that is not raised, nor may we allow an opposing party to bear the loss caused by poor litigation of the trial by counsel for the party responsible."

However, after it lost on the foreseeability issue, Central amended its answer to assert immunity. The trial court granted Central's motion to amend its answer pursuant to Civ.R. 15(A).

Civ.R. 15(A) provides that a party may amend its pleading by leave of court and that such leave "shall be freely granted when justice so requires." The decision of whether to grant a motion for leave to amend a pleading is within the discretion of the trial court. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 121–122, 573 N.E.2d 622, 624. While the rule allows for liberal amendment, motions to amend pleadings pursuant to Civ.R. 15(A) should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. *Hoover* at paragraph two of the syllabus.

The motion to amend was filed after a trial date was set and two years and ten months after the litigation had commenced. We find that the trial court abused its discretion in allowing this prejudicial and untimely filing.

Appellants were forced to expend time, resources, and money to oppose the first motion for summary judgment, which was appealed all the way up to this court (although we declined jurisdiction in the first appeal). Then, after all experts were in place and discovery was complete, Central was permitted to amend its answer and file a second summary judgment motion to assert and argue an obvious defense, which most likely would have terminated the litigation in the first instance, or at the very least, would have narrowed the issues remaining for resolution. Moreover, we are particularly troubled by the fact that Central's motion did not give a rationale for its failure to properly assert this affirmative defense in its answer to its original complaint or for its failure to do so in the ensuing two years and ten months. Thus, in the absence of any explanation, we find that Central should have attempted to amend its answer to include the immunity defense prior to its initial motion for summary judgment, rather than in piecemeal motions which served no purpose but to delay the trial of this matter. Because of Central's failure to do so, we find that appellants were unnecessarily forced through the appellate system on two separate occasions.

Under these facts, we determine that the trial court abused its discretion in granting the motion to amend. Therefore, we find that Central has waived its statutory immunity defense, and hold that R.C. Chapter 2744 has no application to this case.

That said, we must determine whether the court of appeals properly found that a question of fact remains as to whether R.C. 4511.75(E) was violated.

R.C. 4511.75(E) provides: "No school bus driver shall start his bus until after any child * * * who may have alighted therefrom has reached a *place of safety* on his residence side of the road." (Emphasis added.)

Central contends that the duty that is imposed by R.C. 4511.75(E) ends when a pupil is discharged from the bus and reaches a place of safety on his residence side of the road. Central believes that this section was enacted to protect children who are boarding and leaving school buses, particularly those children who are at risk when crossing in front of school buses and other vehicles in the road. Thus, Central asserts that once Andrew was safely on the residence side of his property, the duty ended.

*Amicus curiae* Ohio School Boards Association ("O.S.B.A.") agrees with Central's assertion. O.S.B.A. argues that an extension of this duty would place an undue burden and hardship on school districts and their employees, resulting in a responsibility to ensure that all children getting off the bus at a designated stop reach their respective homes and receive supervision at their homes before the bus driver is permitted to move on to the next stop. O.S.B.A contends that such a result would lead to the illogical conclusion that a bus driver would not be permitted to leave a bus stop where a "latchkey" child has alighted because no adult supervision is being provided at the child's home. O.S.B.A. does not believe that R.C. 4511.75(E) requires that bus drivers interrogate each child before exiting the school bus to ensure that each child's parents are home. Instead, O.S.B.A. believes that the plain and unambiguous language of R.C. 4511.75(E) states that the duty a school district owes a child ends once the child has exited the bus and reached the residence side of the road.

The appellate court disagreed, finding that based on the unique facts in this case, there was a question of fact as to whether Andrew was left in a place of safety as required by R.C. 4511.75(E). We agree. While we believe that Central and O.S.B.A. raise valid concerns, we find based upon the record before us that a factual question was presented.

First, we note that this is not a situation where the bus driver was unaware that no one was at the house. Volkert testified that she did not see Mr. Turner's car and she admitted that she was concerned about Andrew's safety. Indeed, she was so concerned that she missed her next stop and had to retrace her route. Additionally, this is not a case where the bus driver arrived at the house at the

designated time. Here, Volkert unilaterally made the decision to alter her route that afternoon. This modification, which occurred without any notification to his parents, caused Andrew, a second grader, to arrive home approximately thirty minutes early. A young child being dropped off thirty minutes earlier than expected without any notification to the parents who are not in the house creates a high potential for danger. In fact, several of Central's employees testified as to the inherent danger in this type of situation. Specifically, Volkert acknowledged the importance of a consistent schedule so that parents would know when to expect the arrival of their children. Thus, under these facts, we find that a question of fact exists as to whether R.C. 4511.75(E) was violated. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264, 273.

We remand the case to the trial court for a trial on the merits under pertinent common-law negligence principles and relevant statutory and administrative provisions argued below.

*Judgment affirmed in part*
*and reversed in part.*

RESNICK and PFEIFER, JJ., concur.

PFEIFER, J., concurs separately.

DOUGLAS, J., concurs in judgment only.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

**PFEIFER, J., concurring.** While the school district in this case did waive its immunity defense, in my view it was a defense that never existed. I believe that Ohio's sovereign immunity statutes are unconstitutional, for the reasons stated in my concurring opinion in *Garrett v. Sandusky* (1994), 68 Ohio St.3d 139, 141, 624 N.E.2d 704, 706.

**DOUGLAS, J., concurring.** I concur in the judgment of the majority. In addition, however, I would decide the sovereign immunity issue, and in that regard, I continue to adhere to my dissent in *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 662 N.E.2d 287, joined by Justices Resnick and Pfeifer.

In that dissent we questioned the legal underpinnings of the sovereign immunity doctrine, raised a number of issues, and invited "critical thinking and scholarly debate and writing" concerning our thoughts. *Id.* at 324, 662 N.E.2d at 297.

Those questions and our contention that the right to trial by jury is affected still remain unanswered.

**COOK, J., concurring in part and dissenting in part.**

### I. Waiver of Affirmative Defense

I agree with the majority that the trial court abused its discretion in permitting Central to amend its answer. As the majority notes, a trial court should refuse an amendment to pleadings if there is undue delay and/or undue prejudice to the opposing party. See Civ.R. 15(A); *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 12 OBR 1, 465 N.E.2d 377. In this case, Central did not seek to amend until nearly three years after it filed its initial answer and after preparations for trial were almost complete. Yet the amended answer asserted a defense that, if proved, would have obviated the need for much of the discovery and would have precluded unnecessary trial preparation. Furthermore, Central's motion for leave to amend offered no reason for the delay. The trial court nonetheless granted Central's motion to amend on the same day that it was filed, thereby denying the Turners an opportunity to argue undue delay and prejudice. The Turners did oppose the amendment on both those bases in a memorandum filed shortly after the trial court rendered its decision. Because the trial court's decision to grant Central's motion to amend was unreasonable under these circumstances, it abused its discretion.

### II. Procedural Posture

Our decision that the immunity defense was waived by the failure to invoke it in a timely manner should result in our remanding this cause to the trial court for further proceedings consistent with the July 1995 decision of the court of appeals. That decision is the law of the case. Sovereign immunity issues raised in the second round of summary judgment motions become irrelevant by virtue of our decision here that Central waived its affirmative defense of immunity.

The majority opinion, however, engages in a discussion about whether the court of appeals properly found that a question of fact remains as to whether Central violated R.C. 4511.75(E). The issue regarding the scope of Central's duty under R.C. 4511.75(E) arose in the second round of summary judgment motions in the context of whether a violation of that statute would provide an exception to sovereign immunity pursuant to R.C. 2744.02(B)(5). The court of appeals decided that reasonable minds could find that, by leaving Andrew at his bus stop knowing his parent was not yet home to supervise him, Central violated R.C. 4511.75(E) and that that question of fact precluded summary judgment in favor of Central on a sovereign immunity basis. But the scope of Central's duty under R.C. 4511.75(E) is not ripe for consideration by this court because this issue arose

after the dispositive error—permitting the immunity defense amendment—occurred.

Although the scope of the duty of bus drivers and school boards under R.C. 4511.75(E) ought to be decided by this court only in a case where the issue is ripe for determination, I nevertheless address it here to offer a view contrary to that adopted by the majority.

### III. The Limited Duty Prescribed by R.C. 4511.75(E)

The language of R.C. 4511.75(E) should inform any decision as to its scope. The statute employs the noun "place" and the phrase "side of the road." R.C. 4511.75(E). This emphasis on geographical concepts comports with Central's and the O.S.B.A.'s arguments for construing the statute to require bus drivers to ensure only the child's safe disembarkment from the bus. A broader construction of the statute would require school districts and their transportation employees to ensure that all children getting off the bus at a designated stop reach their respective homes and receive supervision at their homes before the bus driver can move on to the next stop.

I therefore not only disagree with the majority entertaining the question, but also disagree with the majority view that the bus driver's deviation from the prescribed time to deliver Andrew to his bus stop can support a claim under R.C. 4511.75(E) as a matter of law.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing opinion.