[Cite as *Porter v. Probst*, 2014-Ohio-3789.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ALLEN PORTER, | ) | |
| | ) | CASE NO.    13 BE 36 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| CHARLES PROBST, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas Court, Case No. 12CV330.

JUDGMENT:        Affirmed.

APPEARANCES:
For Plaintiff-Appellant:        Attorney Daniel Balgo
Attorney Scot McMahon
156  Woodrow Avenue
St. Clairsville, Ohio  43950

For Defendants-Appellees:        Attorney Timothy Rankin
266 North Fourth Street, Suite 100
Columbus, Ohio  43215-2511

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  August 29, 2014

VUKOVICH, J.

**{¶1}** Plaintiff-appellant Allen Porter appeals the decision of the Belmont County Common Pleas Court granting summary judgment for defendants-appellees Charles Probst, Matt Coffland, Virginia Favede acting as the Board of County Commissioners of Belmont County; Fred Thompson, Sheriff of Belmont County; and Andrew Sutak, Auditor of Belmont County. The first issue is whether the trial court abused its discretion when it denied Porter's motion to amend his complaint. The second issue is whether the trial court's grant of summary judgment is supported by the record.

**{¶2}** For the reasons expressed below, the decision of the trial court is hereby affirmed. The trial court did not abuse its discretion when it denied the motion to amend the complaint, nor did it commit error when it granted summary judgment in appellees' favor.

### Statement of the Facts and Case

**{¶3}** Porter was hired in 1985 by Sheriff McCort of Belmont County for the position of Jail Administrator. Porter continuously held that position until June 19, 2009, when he was laid-off by Sheriff Thompson. The alleged reason for the lay-off was budgetary concerns. The Jail Administrator position is undisputedly a fiduciary, non-classified position that serves at the whim of the Sheriff.

**{¶4}** Following his lay-off, Porter applied for and received unemployment benefits for about a month. About a month after his lay-off, he contacted the Public Employees Retirement System and retired; he did not notify Belmont County of his retirement until November 2009.

**{¶5}** As a result of his severance from employment with Belmont County, Porter received his accumulated vacation leave payment. However, Belmont County did not give him his sick leave payment because according to it the employee handbook indicates that in order to be eligible for this benefit the employee must retire from active service.

**{¶6}** As a result of the above, Porter filed a complaint against the Commissioners, Sheriff and Auditor on September 23, 2010. That complaint was

voluntarily dismissed in July 2011.  In July 2012, Porter re-filed his complaint.  In that complaint, he alleged that he requested and received assurances from Sheriff Thompson as to his continued employment and that he ignored potential positions for employment elsewhere in reliance on those assurances.  He also claimed that as Jail Administrator he was unable to be absent from his jail position and that the previous Sheriff, Sheriff McCort, allowed him to accumulate vacation hours and sick leave hours in excess of those allowed by the policy manual. However, during his tenure under Sheriff Thompson, two audits were performed and that resulted in reducing his vacation hours.  The first audit was an internal audit that caused a reduction because the hours were not being computed correctly by the administrative assistant; the hours were incorrectly being computed under the union formula rather than the nonunion formula.  The second audit was performed by the state and dealt with caps to vacation hours; employees were being permitted to accrue vacation hours over the caps that were permitted by the rule.  Following the second audit, the vacation hours were reduced to the cap level.  Porter however, claimed that Sheriff McCort, the previous sheriff, had authorized management positions to exceed the cap because they could not take vacations due to their positions.  He was not given notice of either reduction and was not afforded a hearing on the reductions.  He also claimed that the Commissioners told Sheriff Thompson to lay him off or they would not ensure that the Sheriff had sufficient levels of funds to ensure continued operation.  Since he was laid-off and not permitted to retire, he was unable to obtain his accumulated sick leave benefit, which was $5,358.73.  He contended that the Commissioners' action was made in "bad faith," interfered with his business rights, and "was without justification or privileged as the Sheriff was the sole appointing authority and officer to appoint or remove" him from his position of employment.  He sought loss of income (amount of annual salary), compensation for unpaid accrued vacation pay and sick leave respectively in the sums of $21,175.37 and $5,358.73, and other relief.

{¶7} Appellees answered asserting sovereign immunity, privilege, and statute of limitations defenses.  A pretrial/scheduling conference was held in February 2013. Following that conference, the trial court issued a "Trial Date and

Scheduling Conference Order." That order was amended in June 2013. It provided that Porter had until June 21, 2013 to disclose his expert witness and that all other witnesses had to be disclosed 90 days prior to trial. That order also set the trial date as November 12, 2013. The order likewise indicated that dispositive motions had to be filed by August 12, 2013.

{¶8} Appellees complied with that order and filed a timely joint motion for summary judgment on the August 12, 2013 deadline. Porter, however, was still conducting discovery. The three depositions he took all occurred on September 10, 2013. On September 12, 2013, Porter filed a motion to Amend the Complaint to add CORSA (County Risk Sharing Authority) as a party and asserted that CORSA intentionally interfered with Porter's business relations. On September 20, 2013, appellees filed a motion in opposition to the motion to amend the complaint. That same day, Porter filed his motion in opposition to summary judgment.

{¶9} On October 11, 2013, the trial court denied the motion to amend the complaint. Approximately a week later, the trial court ruled on the summary judgment motion and granted summary judgment in appellees' favor. 10/22/13 J.E. That decision was largely based on the doctrine of sovereign immunity. Porter timely appeals from those two decisions.

First Assignment of Error

{¶10} "Granting Plaintiff's motion for leave to file an amended complaint would not have caused any actual prejudice."

{¶11} As aforementioned, Porter moved to amend his complaint to add CORSA as a defendant and claim that CORSA interfered with his employment, a tortious interference with business relation claim. CORSA is the County Risk Sharing Authority. Deposition testimony revealed that CORSA is "a self –insured entity that insures counties and county work forces" and that out of the 88 counties in Ohio about 66 counties are insured by CORSA. Thompson Depo. 12. The basis for the request to amend was Sheriff Thompson's statement, during his deposition, that he was informed by CORSA that if Porter was not terminated from his position as jail administrator the Belmont County Sheriff's Department would be dropped from the

insurance. Thompson Depo. 12, 18. CORSA's demand was allegedly based on a situation that occurred in 2007 with a jail prisoner, Randall Homko. Thompson Depo. 12. The situation involved tazering that individual who was not only a prisoner but a mental patient. The FBI was investigating the matter "in 2009 when Porter was laid-off.

{¶12} Civ.R. 15(A) governs amendments to pleadings. It states:

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within fourteen days after service of the amended pleading, whichever is later.

Civ.R. 15(A).

{¶13} While the rule allows for liberal amendment, motions to amend pleadings pursuant to Civ.R. 15(A) should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. *Turner v. Cent. Local School Dist.,* 85 Ohio St.3d 95, 99, 706 N.E.2d 1261 (1999). The decision to grant or deny a motion to amend is within the trial court's discretion. *Id.* Thus, an appellate court reviews such a ruling under an abuse-of-discretion standard of review. *Id.* The Ohio Supreme Court has repeatedly explained that "[t]he term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

{¶14} The trial court denied the motion to amend for two reasons. First, it found that appellees would be prejudiced by the delay the amendment would cause.

Second, it found that the cause of action sought to be added was barred by the statute of limitations.

{¶15} The trial court found prejudice because the matter had been pending off and on for over 3 years and allowance of the amendment clearly would have delayed the proceedings because it would have resulted in additional discovery, "including the retaking of some depositions previously administered as well as [the filing of] an additional Motion for Summary Judgment." 10/11/13 J.E. That reasoning is supported by the record. In February 2013, a trial date and scheduling conference order was issued which set forth certain deadlines for witness disclosures, dispositive motions and a trial date. That order was amended in June 2013. In the amended order, trial was set for November 12, 2013; witnesses were required to be disclosed 90 days prior to trial and although no discovery deadline was set, it was ordered that dispositive motions were to be filed no later than August 12, 2013. 06/07/13 Order. Thus, when the motion to amend was filed on September 12, 2013, the deadline for witness disclosures had passed, the deadline for dispositive motions had passed, and the trial was slated to occur in two months. Thus, the motion to amend was filed in the eleventh hour. Furthermore, despite the fact that Porter had months to complete discovery, he did not depose anyone until September 10, 2013. On that date three depositions were taken – Kitty Paboucek, Commissioner Charles Probst and Sheriff Fred Thompson. As can be seen, this was done after the deadline for witness disclosures and dispositive motions.

{¶16} In contrast to Porter's actions, appellees complied with the scheduling order. Porter Depo. 07/18/13 (before the disclosure deadline). Also their motion for summary judgment was timely filed.

{¶17} Consequently considering the above, the trial court did not abuse its discretion in finding undue prejudice as the basis for denying the Civ.R. 15 motion to amend the complaint.

{¶18} However, as aforementioned, that was not the only reason for denying the motion to amend. The trial court also found that the tortious interference claim

against CORSA was barred by the statute of limitations. We also agree with that finding.

**{¶19}** All parties concede that the tortious interference with a business relation claim has a four year statute of limitations and that at the time of the motion to amend, that limitations period had expired. R.C. 2305.09(D). The controversy is whether the claim is subject to the discovery rule. Porter contends that it is; appellees contend that it is not.

**{¶20}** The discovery rule in R.C. 2305.09 provides:

> If the action is for trespassing underground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered.

R.C. 2305.09(E).

**{¶21}** In finding that the discovery rule is not applicable to negligence claims brought under R.C. 2305.09(D), the Ohio Supreme Court stated:

> While expressly providing a discovery rule for certain actions arising under R.C. 2305.09, no such rule was extended to general negligence claims. The General Assembly's failure to include general negligence claims under the discovery rule set out in R.C. 2305.09 argues strongly that it was not the legislature's intent to apply the discovery rule to such claims. See *Kirsheman v. Paulin* (1951), 155 Ohio St. 137, 146, 44 O.O. 134, 139, 98 N.E.2d 26, 31 (explaining the statutory significance of the Latin phrase, *expressio unius est exclusio alterius*). The legislature's express inclusion of a discovery rule for certain torts arising under R.C. 2305.09, including fraud and conversion, implies the exclusion of other torts arising under the statute, including negligence. See *id.*

*Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 181, 546 N.E.2d 206 (1989).

**{¶22}** Applying this reasoning to the matter at hand, since the statute does not expressly provide for application of the discovery rule for tortious interference claims, the discovery rule is inapplicable.

**{¶23}** Despite the language of statute and the reasoning in *Investors*, Porter argues that it would be against public policy to not extend the discovery rule to claims for tortious interference. We do not find this argument persuasive. Public policy arguments are better directed to the General Assembly; it is for the legislature of Ohio to define the public policy of the state. *State ex rel. Cincinnati Enquirer v. Dupuis,* 98 Ohio St.3d 126, 2002–Ohio–7041, 781 N.E.2d 163, ¶ 21 ("the General Assembly is the ultimate arbiter of public policy").

**{¶24}** Regardless, even if we could apply the discovery rule, there is a strong argument that Porter cannot satisfy its mandates because he did not exercise reasonable diligence. Under the discovery rule, the statute of limitations does not begin to run until the plaintiff discovered, or through the exercise of reasonable diligence, should have discovered, the complained of injury. *Sullivan v. Westfield Ins. Co.*, 11th Dist. No. 2012-L-004, 2013-Ohio-146, ¶ 32. For example, if the cause of action is for fraud, the cause does not accrue until either the fraud is discovered, or in the exercise of reasonable diligence, the fraud should have been discovered. *Id.* Thus, the applicable statute of limitations is triggered by the "*constructive* knowledge of facts, rather than *actual* knowledge of their legal significance * * *." *Id.* quoting *Flowers v. Walker,* 63 Ohio St.3d 546, 549, 589 N.E.2d 1284 (1927).

**{¶25}** The claimed injury was Porter's termination as jail administrator. All of the complaints filed by Porter, even the one that was voluntarily dismissed, asserted a claim for tortious interference with his employment; Porter was always under the belief that Sheriff Thompson was directed by someone to fire Porter. Porter, however, thought that it was the commissioners. It was not until Porter deposed Sheriff Thompson that he found out that CORSA informed the sheriff that if he was not terminated then the Sheriff's Department would be dropped from the insurance. That information is the basis of the tortious interference claim that Porter sought to add to the complaint. This information was easily discoverable through a timely

deposition or interrogatories. However, Porter waited until 2013 to depose the sheriff who has always been a defendant in this action and is the person who would know whether or not someone directed him to terminate Porter. Thus, Porter had constructive knowledge of injury and Porter's actions do not amount to reasonable diligence. Even if the discovery rule is applicable, he cannot meet its requirements. Consequently, for the above reasons, this assignment of error lacks merit.

Second Assignment of Error

**{¶26}** "The trial court erred in granting Defendant's motion for summary judgment because there were many issues of material fact to be decided by a jury."

**{¶27}** We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.,* 77 Ohio St .3d 102, 105, 671 N.E.2d 241 (1996). Civ.R. 56(C), provides that summary judgment is appropriate when, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club,* 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201 (1998).

**{¶28}** The claims remaining at the time of the summary judgment motion were: 1) promissory estoppel, 2) sick leave benefit; 3) due process, and 4) tortious interference with business rights/employment. The basis for the promissory estoppel claim was the loss of employment and reliance on continued employment. Porter claimed that Sheriff Thompson promised him his job was secure and that he relied on these assurances when he did not pursue other job opportunities. The next claim concerns his retirement benefits, specifically his sick leave benefit. Belmont County did not give him a sick leave benefit because he did not retire from "active" duty. His due process claim was based on his loss of vacation hours though the audits that capped his vacation hours. He claims he should have received a hearing before those hours were taken away. His interference claim was against the commissioners alleging that they made Sheriff Thompson lay-off Porter.

**{¶29}** The trial court found that the promissory estoppel claim was barred by sovereign immunity and that his claim for losing possible job opportunities was

speculative at best. The trial court found that the Belmont County Personnel Policy Manual concerning his sick leave benefit clearly dictated that he had to be active duty to be entitled to it. As for the due process claim, the trial court found that in order to be entitled to due process, the employee must first have a vested property right. Here, the court found there was no property right given the language in the Personnel Policy Manual. As to the interference claim against the commissioners, the court found that the claim was barred by sovereign immunity.

**{¶30}** Porter finds fault with all of those decisions. Each cause will be addressed in turn.

Promissory Estoppel

**{¶31}** The Ohio Supreme Court has clearly stated that the "[p]rinciples of equitable estoppel generally may not be applied against the state or its agencies when the act or omission relied on involves the exercise of a governmental function." *Sun Refining & Marketing Co. v. Brennan*, 31 Ohio St.3d 306, 307, 511 N.E.2d 112 (1987). See also *Hortman v. Miamisburg,* 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 25. R.C. 2744.01(C) defines a government function as:

> "Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

> (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

> (b) A function that is for the common good of all citizens of the state;

> (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

> (2) A "governmental function" includes, but is not limited to, the following:

* * *

 (h) The design, construction, reconstruction, renovation, repair, maintenance, and operation of jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code;

R.C. 2744.01(C).

**{¶32}** Thus, the operation of a jail constitutes a government function. Furthermore, employment decisions made in the exercise of a government function fall within this protection. *Campolieti v. Cleveland*, 184 Ohio App.3d 419, 2009-Ohio-5224, ¶ 36 (8th Dist.2009), citing *Western–Southern Life Ins. Co. v. Fridley*, 69 Ohio App.3d 190, 590 N.E.2d 325 (1st Dist.1990). Consequently, the claim is barred by sovereign immunity.

**{¶33}** However, even if it was not, summary judgment was still appropriate. "The elements necessary for a promissory estoppel claim are (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) injury by the reliance by the party claiming estoppel." *Landpor Contrs., Inc. v. C&D Disposal Tech. L.L.C.*, 7th Dist. No. 11-JE-28, 2013-Ohio-1436, ¶ 34. "'To be successful on a claim of promissory estoppel "[t]he party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading."'" *Filo v. Liberato*, 7th Dist. No. 11MA18, 2013-Ohio-1014, 987 N.E.2d 707, ¶ 10, quoting, *Olympic Holding [Co., L.L.C. v. ACE Ltd.,* 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93,] ¶ 39, quoting *Shampton v. Springboro,* 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883 ¶ 34.

**{¶34}** The focus here is that Porter had to change his position for the worse. The evidence brought forth during depositions does not create a genuine issue of material fact as to this element. The evidence is that Porter received two invitations to apply for two jobs. One was at a new county detention facility in Omaha, Nebraska. Porter Depo. 22. The other was for a local jail inspector position for the

Ohio Bureau of Adult Detention. Porter Depo. 22-23. These were invitations to submit his resume for these positions. He never submitted applications for the positions, nor did he ever interview for the positions. Porter Depo. 25. Thus, it is unclear whether Porter would have been hired for either of these positions. Had he been offered one of the jobs and had turned it down based on the alleged promises that his job was secure, there would be a clear argument that he changed his position for the worse. However, given these facts, as the trial court indicated, his claim for losing other possible job opportunities is speculative at best.

<u>Sick Leave Benefit</u>

**{¶35}** As aforementioned, despite having accumulated sick time, Belmont County Commissioners refused to pay him a sick leave benefit. The basis of its denial was that when he retired he was not an active employee.

**{¶36}** The Belmont County 2008 Personnel Policy Manual provides the following:

A. A County employee, with ten (10) years of service who retires in accordance with the provisions of PERS or any retirement plan offered by the state, shall be paid one-fourth (1/4) of the value of his or her earned but unused leave credit. The maximum of such payment, however, shall be for thirty (30) days of sick leave.

B. Such payment shall be based on the employee's hourly rate of pay at the time of retirement.

C. Such payment shall be made only once and shall eliminate all sick leave credit accrued by the employee.

D. Eligible County employees retiring from active service shall request such payment in writing, in order to initiate the payment process.

2008 Belmont County Personnel Policy Manual Rule 6.4.

**{¶37}** A similar provision regarding the "active service" requirement is found in Rule 5.4 of the 1984 Personnel Policy Manual (manual in effect when he was hired).

Both policy manuals were appropriately attached to the summary judgment motion by means of an affidavit.

**{¶38}** The trial court found that the above language required retirement from active service. It concluded that since Porter was laid-off and then retired, he did not retire from active service, and therefore, was not entitled to the sick leave benefit.

**{¶39}** The trial court's assessment that Porter was laid-off and then retired is accurate. He was laid off June 19, 2009 and in mid-July 2009 he notified PERS that he was retiring. He did not notify Belmont County until November 6, 2009 that he wanted his sick leave benefit. In that letter it does not specifically use the word retire, however, it does reference Section 6.4 of the policy manual. Therefore, it appears that this letter is a notification of retirement.

**{¶40}** That said, the language of the policy manual is "retiring from active service." Porter, at the time of his retirement, was not retiring from active service. He was retiring after being laid-off and applying for unemployment. There is no case law specific to this fact pattern that defines active service. However, in the context of police and firefighters, statutes and case law clearly indicate active service is different from being laid-off. *See* R.C. 742.27; R.C. 742.371; *State ex rel. Abde v. Police & Firemen's Disability & Pension Fund*, 10th Dist. No. 96APD02-126, 1996 WL 362083 (June 25, 1996). Therefore, when one is laid-off and then retires, that retirement is not a retirement from active service. Accordingly, the trial court construed the language of the policy correctly.

<u>Due Process</u>

**{¶41}** Regarding this claim, the arguments that were raised in the complaint and to the trial court were that Porter's due process rights were violated when his vacation hours were capped. He claims that Sheriff McCort, the sheriff prior to Sheriff Thompson, promised him that the caps in the Belmont County Policy Manual did not apply to him and that his vacation hours would not be capped. During Sheriff McCort's tenure and during part of Sheriff Thompson's tenure, Porter acquired vacation hours in excess of the caps. As aforementioned, sometime after Sheriff

McCort left office two audits were performed of employees' vacation and sick hours. During one of the audits, Porter's vacation hours were adjusted to reflect the caps.

**{¶42}** The caps to the vacation hours are found in Rule 6.2 of the Belmont County Personnel Policy Manual. That rule states that employees working 40 hour a week with at least 15 years of service, but less than 25 years of service, are entitled to 160 hours of vacation a year. The maximum carryover allowed is three years. Thus, there is a cap of 480 vacation hours for an employee with at least 15 years of service, but less than 25 years of service.

**{¶43}** Other than an alleged promise by Sheriff McCort, there is no other indication that an exception to the cap was made. Porter admitted in his deposition that he never saw a written exception to the cap rule. Rather, he claims that Sheriff McCort made that promise orally to all management personnel who according to Porter could not take vacation as they wanted because of the positions they were in.

**{¶44}** Porter's argument and statements appear to raise a promissory estoppel argument, as well as a due process argument. As mentioned above, sovereign immunity bars a promissory estoppel argument. Therefore, that argument fails.

**{¶45}** As to due process, it has been explained that under the Fourteenth Amendment to the United States Constitution, "[n]o state shall * * * deprive any person of life liberty or property without due process of law." In evaluating whether a person has a due process claim, a court "must determine whether a property or liberty interest exists and, if so, what procedures are constitutionally required to protect that right." *Bzdzuich v. U.S. Drug Enforcement Admin.* (C.A.6, 1996), 76 F.3d 738, 742 (6th Cir.1996). In order to establish a procedural due process violation, it must be shown that the conduct complained of deprived plaintiff of a liberty or property interest without adequate procedural safeguards. *Roe v. Franklin Cty.*, 109 Ohio App.3d 772, 779, 673 N.E.2d 172 (10th Dist.1996), citing *Bd. of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 569, 92 S.Ct. 2701 (1972). As such, it is not the deprivation itself that is actionable, rather it is the deprivation without due process of law that is actionable. *Hahn v. Satullo*, 156 Ohio App.3d 412, 2004-Ohio-

1057, ¶ 83 (10th Dist.), citing *Shirokey v. Marth*, 63 Ohio St.3d 113, 116, 585 N.E.2d 407 (1992).

**{¶46}** The trial court and appellees cite to *Scott v. Bazetta Township Bd. of Trustees*, 11th Dist. No. 96-T-5571, 1997 WL 703374 (Oct. 31, 1977), for the position that the employee does not have a vested property interest in unpaid vacation pay when the employee has been laid-off or their position has been abolished. In that case, a former police lieutenant sued for unpaid vacation and sick leave. The evidence submitted on summary judgment showed that the lieutenant had been paid according to statute for the unpaid vacation leave, but there was no policy to reimburse for unpaid sick leave. The lieutenant argued that he had been promised by the Chief of Police that he would get paid for unused sick leave, despite the fact that the county policy provided no such benefit. Summary judgment was granted in the township's favor based on the evidence submitted. That decision was affirmed by the appellate court, which stated, "Since appellant could not produce competent evidence to show that he was wrongfully denied payment for his unused sick time, he failed to show that he had any constitutionally protected 'property interest' which would support a claim of violation of his right to due process." *Id.*

**{¶47}** The facts in *Scott* are akin to the one before us; oral promises were made concerning a matter that was in conflict with the policy manual. Other than Porter's averment there was nothing to corroborate that Sheriff McCort made that promise, had the authority to make that promise, or could make good on that alleged promise. Thus, *Scott* provides a basis for this court to affirm the trial court's ruling; Porter could not produce competent evidence to show he was wrongfully denied vacation days over the cap and thus, he failed to show that he had any constitutionally protected property interest.

Tortious Interference

**{¶48}** The trial court held that Porter's claim that the Belmont County Commissioners tortious interference with his employment was barred by sovereign immunity. Porter finds fault with that determination. According to him, Sheriff Thompson was pressured by the commissioners and CORSA to fire him. He

contends that Sheriff Thompson's actions cannot be considered a government function because he was "caving in" to outside influences.

{¶49} As indicated earlier, the operation of a jail constitutes a government function and the employment decision made within the exercise of that government function also falls within a government function to which sovereign immunity applies. R.C. 2744.01(C); *Campolieti*, 2009-Ohio-5224, ¶36, citing *Western–Southern Life Ins. Co.*, 69 Ohio App.3d 190. It is undisputed that Porter was an at-will employee and served at the whim of the Sheriff. Furthermore, it is noted that the Fourth Appellate District has held that generally political subdivisions (commissioners) are immune from a claim of intentional interference with business relations. *Dolan v. Glouster*, 173 Ohio App.3d 617, 2007-Ohio-6275, ¶ 23. The commissioners were engaged in a government function and acting in the interests of the county when they determine the budget of the county. Testimony established that often times the Sheriff's Department, which is where the jail's budget came from, would run out of money in October or November and have to ask the commissioners for more money to cover expenses for the last couple months of the year. Due to the economic state of the county, the commissioners could no longer manage this with the budget. Thus, to the extent that the termination was based on budgetary concerns, that claim is barred by sovereign immunity.

{¶50} Porter claims that the commissioner, "through their agent CORSA mandated Sheriff Thompson to terminate" Porter's employment. That is an inaccurate statement of the evidence. Sheriff Thompson stated that CORSA told him that if Porter was not terminated, the Sheriff's Department would be dropped from the insurance policy. There is no evidence that commissioners told CORSA to do this. Likewise, there is no evidence that CORSA is an arm of the commissioners. CORSA is a "non-profit political subdivision joint self-insurance pool." *Bell v. Nichols*, 10th Dist. No. 10AP-1036, 2013-Ohio-2559 (no paragraph numbers). As stated earlier, about 3/4 of Ohio counties belong to CORSA and effectively CORSA is an insurer. As the trial court pointed out insurers can select the risks it wants to insure. Thus,

there is no evidence beyond mere allegation that CORSA was acting on behalf of the commissioners.

**{¶51}** There is evidence from Sheriff Thompson that his reason for laying Porter off had nothing to do with the commissioners. Porter's allegation that the commissioners wanted him fired stem from the incident involving Randall Homko. Homko was a jail inmate and mental health patient that was tazered. The matter occurred in 2007 and in 2009 the investigation was still ongoing by the FBI and state. Sheriff Thompson testified that in addition to CORSA's statement about being dropped from insurance, there were legal issues involving federal indictments. Sheriff Thompson was informed that if Porter was no longer a member of the sheriff's office, the federal grand jury indictments would basically go away. Thompson Depo. 44. He further added that once Porter was laid-off the FBI investigation ended and no grand jury indictments were handed down. Thompson Depo. 45. Thompson stated that he informed Porter of the FBI investigation and that the grand jury investigation would go away if Porter was terminated. Thompson Depo. 44. Thus, the basis for the lay-off was the potential to be dropped from insurance and to resolve the FBI investigation.

**{¶52}** Furthermore, the only commissioner to be deposed was commissioner Charles Probst. His testimony provides no evidence that the commissioners either directed CORSA to drop the Sheriff's Department from the insurance if Porter was not terminated or an indication that the commissioners ordered Sheriff Thompson to terminate Porter. Thompson even indicated that it was his decision of whether to retain Porter or to terminate his employment.

**{¶53}** Considering the evidence, the trial court correctly concluded that the tortious interference with employment claim was barred by the doctrine of sovereign immunity.

**{¶54}** For all of the above stated reasons, the second assignment of error lacks merit.

<u>Conclusion</u>

**{¶55}** In conclusion, both assignments of error lack merit.  Thus, the judgment of the trial court is hereby affirmed.  The trial court did not abuse its discretion when it denied the motion to amend.  Furthermore, the trial court did not err when it granted summary judgment in appellees' favor.


Waite, J., concurs.
DeGenaro, P.J., concurs.