[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Yost v. Burns*, Slip Opinion No. 2022-Ohio-1326.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-1326

THE STATE EX REL. YOST, ATTY. GEN., APPELLANT, *v.* BURNS, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Yost v. Burns*, Slip Opinion No. 2022-Ohio-1326.]

*R.C. 9.39—Strict liability of public officials for the misappropriation of public money—A public official cannot be held strictly liable for the misappropriation of public money when neither the official nor any of the official's subordinates collects or receives, and therefore does not control, the funds—Judgment affirmed.*

(No. 2020-1078—Submitted June 30, 2021—Decided April 26, 2022.)

APPEAL from the Court of Appeals for Montgomery County,

No. 28496, 2020-Ohio-3820.

_____

**DONNELLY, J.**

{¶ 1} At its core, this case is about whether appellee, Robert Burns, may be held responsible for the embezzlement of public money by Carl Shye from Burns's and Shye's mutual employer, even though it is clear from the record that Burns

played no part in Shye's criminal activity. We conclude that Burns is not strictly liable for the embezzled funds, because he did not receive or collect the public money that was misappropriated. We affirm the judgment of the court of appeals.

**FACTS AND PROCEDURAL HISTORY**

{¶ 2} Burns contracted with New City Community School ("New City"), a charter school, to be its chief executive officer. His official title was "director," under a contract running from August 1, 2009, to June 30, 2010. Burns reported to the New City School Governing Board, which granted to him the "general supervision and management authority of the School and all personnel employed by the School."

{¶ 3} Burns had the authority to approve budget expenditures for New City using the Ohio Department of Education's ("ODE") electronic accounting system. Although approval of budget expenditures is what triggered the release of public money from the ODE into New City's bank accounts, Burns had no authority to disburse public money from any of New City's bank accounts, nor did he have any supervisory responsibilities over those accounts. Those duties belonged to Shye. Shye was an independent contractor hired by New City to be the school's treasurer, and he reported directly to the board of directors. Burns did not supervise, manage, or have any authority over Shye.

{¶ 4} During the term of Burns's contract, New City received state and federal grants totaling $432,989.57. The auditor of state audited New City for the 2009-2010 school year and concluded that more than $50,000 had been misappropriated.[1]

{¶ 5} In the auditor's initial finding for recovery, Burns was not identified as a person responsible for the misappropriation of public funds. The auditor relied on an Attorney General opinion positing that R.C. 9.39 does not impose strict

---

1. Shye pleaded guilty in federal court to embezzlement of funds from New City and various other entities that had received federal funds.

liability on public officials for misappropriation of public money unless the officials controlled those funds.

{¶ 6} On July 3, 2018, appellant, the Ohio Attorney General, filed a complaint against Burns and three other defendants to recover the misappropriated funds. The attorney general contended that Burns and the three other defendants, including Shye, were jointly and severally liable as public officials under R.C. 9.39. The trial court granted the attorney general's cross-motion for summary judgment against Burns and found him strictly liable.

{¶ 7} On appeal, Burns argued that his authority over New City's budget expenditures did not include having control of public money. The court of appeals agreed and reversed the lower court's decision, holding that public officials are strictly liable for the loss of public money only when the official exercises control over those funds, even if the loss is the result of a subordinate's conduct. The court of appeals concluded that Burns had not received the funds or otherwise controlled them and that Shye was not Burns's subordinate.

{¶ 8} We accepted the attorney general's discretionary appeal and address the following proposition of law:

> A public official is liable under R.C. 9.39 if he or his subordinates have "collected" public money on behalf of his public office. One has "collected" public money if he has personally taken actions essential to the public office's obtaining or receiving the public money, and the office receives the public money.

*See* 160 Ohio St.3d 1458, 2020-Ohio-5332, 157 N.E.3d 789.

## ANALYSIS

{¶ 9} This case was decided on summary judgment and is therefore subject to de novo review. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-

4505, 936 N.E.2d 481, ¶ 29. Summary judgment will be granted when "the evidence, properly submitted, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 11; Civ.R. 56(C).

{¶ 10} R.C. 9.39 states: "All public officials are liable for all public money received or collected by them or by their subordinates under color of office." We examined the history and components of that statute in *Cordray v. Internatl. Preparatory School*, 128 Ohio St.3d 50, 2010-Ohio-6136, 941 N.E.2d 1170, ¶ 12-27. As in *Cordray*, that legal discussion is relevant here, but not dispositive. The key question in *Cordray* was factual: whether the defendant and her subordinates had "*received or collected* public money under color of office." (Emphasis sic.) *Id.* at ¶ 28. We remanded the cause to the trial court for a determination of whether the defendant's responsibilities at the preparatory school had "included the receipt or collection of public money, or whether she [had] supervised employees who received or collected public money under color of office." *Id.* at ¶ 29.

{¶ 11} The same issue presents itself in this case: Did Burns receive or collect public money under color of office? It is quite clear that he did not. The person who received or collected public money in this case was Shye. Even though the money could not have been received or collected without Burns's requesting funds from the state or federal government, Burns himself did not receive or collect those funds.

{¶ 12} Among the strongest support for Burns's position are published opinions of the attorney general. "The language of R.C. 9.39 with respect to the liability of public officials is plain and unambiguous. Public officials are held liable, pursuant to R.C. 9.39, only for public money that they or their subordinates receive or collect." 1993 Ohio Atty.Gen.Ops. No. 93-004, at 2-25. "Thus, a public

official will be held personally liable if public moneys that come into his possession or custody in his official capacity are lost." 1994 Ohio Atty.Gen.Ops. No. 94-048, at 2-239.

{¶ 13} Though the words "received" and "collected" are not defined in any statutory provision related to R.C. 9.39, we conclude that the attorney general and the court of appeals were correct in determining that both words encompass an element of control. *See id.*; *Cordray*, 128 Ohio St.3d 50, 2010-Ohio-6136, 941 N.E.2d 1170, at ¶ 12 ("That public officials are liable for the public funds they control is firmly entrenched in Ohio law"). The *Oxford English Dictionary* defines "collect" as "to receive money, to get paid." III *Oxford English Dictionary* 476 (2d Ed.1989). And it defines "receive" as "[t]o take in one's hand, or into one's possession." VIII *Oxford English Dictionary* at 314. These definitions comport with our conclusion in this case. In short, a person cannot collect or receive public money, let alone be held strictly liable for the misappropriation of that money, within the context of R.C. 9.39 without controlling it. The record is quite clear that Burns did not control the misappropriated funds: the money was never in his possession, nor did he exert any control over it. Moreover, because Shye was an independent contractor, hired and managed by New City's board of directors, he was not Burns's subordinate.

{¶ 14} Burns has an obligation to "account for and disburse according to law moneys that have come into his hands by virtue of his being [a] public officer" of New City, *Seward v. Natl. Sur. Co.*, 120 Ohio St. 47, 50, 165 N.E.537 (1929). The attorney general relies on *Seward* and *State, for Use of Wyandot County v. Harper*, 6 Ohio St. 607 (1856), in support of his argument that Burns should be held liable for public money that was received under color of office. But in both of those cases, the defendants had received, collected, and physically controlled the funds for which loss they were found liable. *Seward* at 49; *Harper* at 610. The facts of this case establish, however, that the public money that was

misappropriated from New City was never in Burns's control nor physically in his hands. Burns did not collect or receive the public money that was misappropriated; therefore, he did not control those funds. Neither did any of his subordinates. Shye, who pleaded guilty to the misappropriation of funds, was not Burns's subordinate; he operated independently of Burns in his general job duties, and he certainly acted independently of Burns in embezzling funds from New City.

## CONCLUSION

{¶ 15} We conclude that Burns cannot be held strictly liable for the misappropriation of public money from New City, because he did not collect or receive those funds. We affirm the judgment of the court of appeals.

Judgment affirmed.

KENNEDY, DEWINE, and STEWART, JJ., concur.

FISCHER, J., dissents, with an opinion joined by O'CONNOR, C.J.

BRUNNER, J., dissents.

_____

**FISCHER, J., dissenting.**

{¶ 16} Because I conclude that appellee, Robert Burns, is strictly liable under R.C. 9.39 for the misappropriation of public funds, I respectfully dissent and would reverse the judgment of the court of appeals.

{¶ 17} R.C. 9.39 provides:

> All public officials are liable for all public money received or *collected* by them *or by their subordinates under color of office*. All money received *or collected by a public official under color of office* and not otherwise paid out according to law shall be paid into the treasury of the public office with which he is connected to the credit of a trust fund and shall be retained there until claimed by its

6

lawful owner. If not claimed within a period of five years, the money shall revert to the general fund of the public office.

(Emphasis added.)

{¶ 18} Critically, among Burns's duties was approving a final expenditure report detailing the distribution of New City Community School funds. Burns had to approve those reports in order to release public funds into the school's bank accounts. Burns submitted applications to acquire funds for the school from three separate grant sources. Without Burns's carrying out these duties, the school would have been unable to collect these financial resources.

{¶ 19} In concluding that Burns is not strictly liable under R.C. 9.39, the majority opinion repeatedly emphasizes that Burns never controlled the funds in question. *See* majority opinion, ¶ 13, 14. It is significant, however, that the plain language of R.C. 9.39 does not require that a public official's liability be contingent on that official's having "controlled" the funds in question. Thus, in reaching its conclusion, the majority opinion effectively writes into the statute a requirement that the public official have "controlled" the funds in question.

{¶ 20} The General Assembly could have included a "control" element in R.C. 9.39; however, it did not. Instead, the statute applies to public officials who have "received or collected" funds.

{¶ 21} This court has stated that "R.C. 9.39 represents a codification of Ohio common law imposing strict liability on public officials for the loss of public funds with which they have been entrusted." *Cordray v. Internatl. Preparatory School*, 128 Ohio St.3d 50, 2010-Ohio-6136, 941 N.E.2d 1170, ¶ 17. In *Cordray*, this court stated, "That public officials are liable for the public funds they control is firmly entrenched in Ohio law." *Id*. at ¶ 12. This court added that it is well-settled that " 'public property and public money *in the hands of* or under the control of such officer or officers constitute a trust fund, for which the official as trustee

should be responsible to the same degree as the trustee of a private trust fund.' " (Emphasis added.) *Id*., quoting *Crane Twp. ex rel. Statler v. Secoy*, 103 Ohio St. 258, 259-260, 132 N.E. 851 (1921).

{¶ 22} Looking at the cases cited in *Cordray* and similar decisions of this court—all of which, notably, were decided under the common law before its codification in R.C. 9.39—Burns asserts that the caselaw establishes that "custody and control of the public funds at issue" is "an essential condition for imposing strict liability." Appellant, the Ohio Attorney General, responds to this argument by asserting that while decisions of this court indicate that "control" of public funds triggers liability on the part of a public official, the caselaw does not require that the funds be "controlled" for liability to attach. Instead, the attorney general argues, the caselaw establishes that "control" is merely one factor sufficient to trigger liability.

{¶ 23} The reading of the statute advocated by the attorney general best synthesizes the common law underlying the statute and the statutory language itself. Burns does not cite any cases in which this court, either before or after the enactment of R.C. 9.39, has held that a public official who collects or receives funds but does not control those funds avoids liability for their misappropriation. The attorney general is correct that while a public official who controls funds (and, therefore, must necessarily have received those funds) is strictly liable under the statute, the statute does not require (nor did the common law require) that the official have control of the funds for liability to attach. In light of the language of R.C. 9.39, the cases addressing the misappropriation of public funds should not be taken as standing for the proposition that funds are "received or collected" only when the public official has control over those funds. In other words, these cases have established that control of public funds is sufficient for liability to attach under R.C. 9.39, but they do not establish that control of public funds is a "floor" that must be met in order to establish liability. Instead, this court's decisions and the

statute, R.C. 9.39, provide that something less than control is sufficient to establish liability, namely a public official's having "received" or "collected" public funds.

{¶ 24} Burns cannot get around the fact that he effectively asks this court to write a "control" requirement into the statute—an act that would go against fundamental principles of law. " 'In construing statutes, it is customary to give words their plain [and] ordinary meaning unless the legislative body has clearly expressed a contrary intention.' " *In re 6011 Greenwich Windpark, L.L.C.*, 157 Ohio St.3d 235, 2019-Ohio-2406, 134 N.E.3d 1157, ¶ 19, quoting *Youngstown Club v. Porterfield*, 21 Ohio St.2d 83, 86, 255 N.E.2d 262 (1970). Here, the words "collected" and "received" are undefined in the statute, and the General Assembly has not clearly expressed an intention that those words should be given anything but their plain and ordinary meaning. The words are also distinct, as "collected" indicates an active seeking of funds, while "received" indicates a passive accumulation of funds. Thus, it is incorrect to treat those two words as interchangeable, as the Second District Court of Appeals did below. *See* 2020-Ohio-3820, 156 N.E.3d 461, ¶ 11-12. Moreover, while Burns argues that the phrase "collected or received" is a term of art meaning "controlled," there is no clear indication that the General Assembly intended that this term of art be applied in this context. Quite simply, if the General Assembly meant to require that the funds be "controlled," it would have used that term instead of "collected or received."

{¶ 25} The trial court was correct that "collected" has a plain and ordinary meaning and that, because Burns played an absolutely necessary role in procuring the federal funds for the school, Burns "collected" those funds. I accordingly would hold that a public official collects funds for purposes of R.C. 9.39 by acquiring them for the official's office, even if the official does not physically receive the funds or control them after receipt.

{¶ 26} For these reasons, I respectfully dissent. I would reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

Dave Yost, Ohio Attorney General, Benjamin M. Flowers, Solicitor General, Stephen Carney, Chief Deputy Solicitor General, and Todd R. Marti and Ashley A. Barbone, Assistant Attorneys General, for appellant.

Bricker & Eckler, L.L.P., and Janet K. Cooper, for appellee.

Gingo & Bair Law, L.L.C., Lindsay F. Gingo, and Sarah E. Kutscher, urging affirmance for amici curiae Buckeye Association of School Administrators, Ohio Association of School Business Officials, and Ohio School Boards Association.

_____