[Cite as *Davis v. Diley Ridge Med. Ctr.*, 2025-Ohio-1940.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Linda Kay Davis, Executor of the
Estate of Scott A. Davis, Deceased,

       Plaintiff-Appellant,

v.

Diley Ridge Medical Center et al.,

       Defendants-Appellees.

:
:
:
:
:
:
:
:

No. 24AP-521
(C.P.C. No. 21CV-1008)

(ACCELERATED CALENDAR)

---

D E C I S I O N

Rendered on May 29, 2025

---

**On brief:** *Colley Shroyer & Abraham Co.*, *L.P.A.*, and *Daniel N. Abraham*, for appellant. **Argued:** *Daniel N. Abraham.*

**On brief:** *Arnold Todaro Welch & Foliano Co.*, *L.P.A.*, and *Frederick A. Sewards*, for appellees. **Argued:** *Frederick A. Sewards.*

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1} Plaintiff-appellant, Linda Kay Davis ("Davis"), Executor of the Estate of Scott A. Davis, deceased, appeals a judgment of the Franklin County Court of Common Pleas. The court granted summary judgment in favor of defendants-appellees, Emily S. Seng, M.D., and Emergency Services, Inc., on Davis's action for negligence and wrongful death.[1] For the following reasons, we affirm.

---

[1] The lawsuit also named Diley Ridge Medical Center, Mount Carmel Health System, and Trinity Health Corporation as defendants. These parties were dismissed from the action prior to the summary judgment stage and are not parties to the present appeal.

## I. Facts and Procedural History

{¶ 2}   On the morning of September 13, 2019, Raymond Leiendecker came to the emergency department at Diley Ridge Medical Center complaining of suicidal thoughts, alcoholism, and homelessness, and stating that his psychiatric medications should be adjusted. He specifically wanted to be admitted for in-patient psychiatric treatment at Columbus Springs East, followed by treatment for alcoholism through the Salvation Army near Toledo, Ohio.  Leiendecker told Dr. Seng, two nurses, and a social worker that he was considering harming himself, including committing suicide.  He did not express any desire to harm others and, when asked, he denied having thoughts about harming others.

{¶ 3}   Based on her interaction with Leiendecker, Dr. Seng concluded that involuntarily hospitalization was not medically necessary.  Instead, she asked questions to determine what alternative strategies might be best for Leiendecker's current state. Dr. Seng inquired about Leiendecker's complaints of recent homelessness, lack of gas money, and failure to fill the psychiatric medications that were prescribed to him during a visit to the emergency department two days earlier.  He became angry with the doctor's questions.  A social worker's chart note indicated that Leiendecker left, "making accusations that he was not getting what he needed and was just going to leave." (Murray Depo. at 44.) A nurse's chart note indicated that Leiendecker stated "I'm just going to walk out of here and screw you guys." (Kirkpatrick Depo. at 11.)  He then stormed out of the hospital and drove away.  No person associated with Diley Ridge attempted to prevent him from leaving. A few minutes later, Leiendecker intentionally drove his truck through the front entrance of the hospital, fatally injuring Scott A. Davis ("decedent"), a respiratory therapist who worked at Diley Ridge Medical Center.

{¶ 4}   The decedent's estate filed a complaint for medical negligence and wrongful death against Dr. Seng, her employer Emergency Services, Inc. ("ESI"), and other parties. Relevant to this appeal, Davis alleged that Dr. Seng failed to recognize that Leiendecker posed a substantial risk of harm to himself and others, and failed to commit him to a psychiatric facility, thereby breaching her duty to prevent Leiendecker from harming others.  Davis alleged that ESI was vicariously liable as Dr. Seng's employer based on the doctrine of respondeat superior.

{¶ 5}   Dr. Seng and ESI filed a motion for summary judgment, arguing they were immune from liability for Leiendecker's harm to third parties based on R.C. 2305.51(B),

which limits the liability of mental health professionals regarding the violent behavior of mental health patients. Davis opposed summary judgment, arguing the immunity statute did not apply because Dr. Seng was not a "mental health professional" as defined in R.C. 2305.51(A)(1)(d) and was not providing treatment at a "mental health organization" as defined in R.C. 2305.51(A)(1)(c). Davis also argued there was a question of material fact whether Leiendecker made "an explicit threat" to harm "one or more clearly identifiable potential victims," which would remove immunity under R.C. 2305.51(B). The trial court concluded that Dr. Seng and ESI were immune under the statute and granted their motion for summary judgment. Davis now appeals.

## II. Assignments of Error

{¶ 6}    Appellant assigns the following three assignments of error for our review:

> [I.] The trial court erred by granting summary judgment based on statutory immunity where the statutory immunity defense was waived.

> [II.] The trial court erred by granting summary judgment based on statutory immunity under R.C. 2305.51(B) where Dr. Seng was not a "mental health professional" providing treatment at a "mental health institution."

> [III.] The trial court erred by granting summary judgment based on statutory immunity under the circumstances in this case.

## III. Discussion

### A. Standard of review

{¶ 7}    Because this case was decided on summary judgment, we review the matter de novo. *State ex rel. Yost v. Burns*, 2022-Ohio-1326, ¶ 9. Davis's second assignment of error raises a question of statutory interpretation, which we also review de novo. *See State v. Vanzandt*, 2015-Ohio-236, ¶ 6. De novo review means the reviewing court independently analyses the record while giving no deference to the trial court's decision. *Johnson v. Am. Italian Golf Assn. of Columbus*, 2018-Ohio-2100, ¶ 13 (10th Dist.).

### B. Waiver

{¶ 8}    In her first assignment of error, Davis argues that Dr. Seng and ESI waived the defense of statutory immunity by failing to assert it in a timely manner.

{¶ 9} When Dr. Seng and ESI asserted statutory immunity in their motion for summary judgment, Davis addressed the merits of the defense and did not object to its untimeliness. "It is a general rule that an appellate court will not consider any error which counsel . . . did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus. Although we must review a summary judgment decision de novo, "that standard does not supersede our settled practice of not addressing issues raised for the first time on appeal." *Deutsche Bank Natl. Trust Co. v. Stone*, 2021-Ohio-3007, ¶ 12 (10th Dist.).

{¶ 10} Because Davis did not ask the trial court to determine whether Dr. Seng and ESI were untimely in asserting their defense, we will not make such a determination for the first time on appeal. Accordingly, we overrule Davis's first assignment of error.

### C. Statutory immunity

{¶ 11} In her second assignment of error, Davis asserts that Dr. Seng and ESI are not immune from liability under R.C. 2305.51(B) because Dr. Seng is not a "mental health professional" providing treatment at a "mental health organization" as the terms are defined in R.C. 2305.51(A)(1)(c) and (d). Davis contends that the immunity provided in R.C. 2305.51(B) only applies to health professionals who are mental health specialists, and that R.C. 2305.51(D) exclusively governs those who are not mental health specialists. We decline to adopt Davis's interpretation of R.C. 2305.51.

### 1. Immunity under R.C. 2305.51

{¶ 12} Davis's argument presents a question of statutory interpretation. When determining the proper application of a statute, our role is to discern the intent of the General Assembly as expressed in the language it enacted. *Vanzandt*, 2015-Ohio-236, at ¶ 7. If the language of the statute is plain and unambiguous, we must simply apply the statute as written without resorting to the rules of statutory construction. *Id.* We give words and phrases their plain and ordinary meaning unless they are defined by statute. *See Daher v. Cuyahoga Community College Dist.*, 2018-Ohio-4462, ¶ 8. When a statute *does* define words and phrases, "such definition controls in the application of the statute." *Terteling Bros., Inc. v. Glander*, 151 Ohio St. 236 (1949), paragraph one of the syllabus.

{¶ 13} R.C. 2305.51 confers certain types of civil liability immunity to entities and individuals including "mental health professional[s]" and "physician[s]." R.C. 2305.51(E).

Specifically, R.C. 2305.51(B) confers immunity in certain situations to a "mental health professional or mental health organization" regarding the actions of "a mental health client or patient" toward others, and R.C. 2305.51(D) confers immunity in certain situations to a "physician, physician assistant, advanced practice registered nurse, or hospital" regarding their actions or inactions toward a "patient."

{¶ 14} R.C. 2305.51(B) provides:

> A mental health professional or mental health organization may be held liable in damages in a civil action . . . for serious physical harm or death resulting from failing to predict, warn of, or take precautions to provide protection from the violent behavior of a mental health client or patient, only if the client or patient or a knowledgeable person has communicated to the professional or organization an explicit threat of inflicting imminent and serious physical harm to or causing the death of one or more clearly identifiable potential victims, the professional or organization has reason to believe that the client or patient has the intent and ability to carry out the threat[.]

R.C. 2305.51(B) goes on to provide that the mental health professional or organization can be liable only if they fail to take one or more of the four following actions: (1) emergency hospitalization under R.C. 5122.10, (2) voluntary or involuntary hospitalization under R. C. Ch. 5122, (3) implementation of an adequate treatment plan concurrent with initiating arrangements for a second opinion risk assessment, and (4) communicating the threat to potential victims and law enforcement.  R.C. 2305.51(B)(1) through (4).

{¶ 15} Next, R.C. 2305.51(D) provides:

> Notwithstanding any other provision of the Revised Code, a physician, physician assistant, advanced practice registered nurse, or hospital is not liable in damages in a civil action . . . for doing either of the following:
>
> (1) Failing to discharge or to allow a patient to leave the facility if the physician, physician assistant, advanced practice registered nurse, or hospital believes in the good faith exercise of professional medical, advanced practice registered nursing, or physician assistant judgment according to appropriate standards of professional practice that the patient has a mental health condition that threatens the safety of the patient or others;

(2) Discharging a patient whom the physician, physician assistant, advanced practice registered nurse, or hospital believes in the good faith exercise of professional medical, advanced practice registered nursing, or physician assistant judgment according to appropriate standards of professional practice not to have a mental health condition that threatens the safety of the patient or others.

R.C. 2305.51(D)(1) and (2).[2]

{¶ 16} As a general matter, all of the "immunities from civil liability and disciplinary action conferred by [R.C. 2305.51] are in addition to and not in limitation of any immunity conferred . . . by any other section of the Revised Code or by judicial precedent." R.C. 2305.51(E). Accordingly, the provisions in R.C. 2305.51 do not create or expand the potential for liability beyond what already exists under other statutory or common law. We note that whether Dr. Seng and ESI are entitled to immunity under R.C. 2305.51 is a separate question from whether Davis could succeed on her claims for medical negligence and wrongful death. *See Argabrite v. Neer*, 2016-Ohio-8374, ¶ 10 ("entitlement to statutory immunity is a separate question from the plaintiff's ability to establish the elements of his or her claim"). In our discussion of whether any of R.C. 2305.51 applies to Dr. Seng and ESI, we are not deciding whether they could be liable on Davis's claims. Instead, we are assuming for the sake of argument that Dr. Seng and ESI could be liable under relevant statutory or common law, and we are determining only if immunity under R.C. 2305.51 applies to that potential liability.

### 2. Immunity related to "mental health services" under R.C. 2305.51(B)

{¶ 17} The immunity in R.C. 2305.51(B) applies to scenarios involving a "mental health professional or organization," and a "mental health client or patient." R.C. 2305.51(A)(1)(d) defines a "mental health professional" as "an individual who is licensed, certified, or registered under the Revised Code, or otherwise authorized in this state, to provide mental health services for compensation, remuneration, or other personal gain." A "mental health organization" is "an organization that engages one or more mental health professionals to provide mental health services to one or more mental health clients

---

[2] During the pendency of this appeal, the General Assembly added "certified mental health assistant" to the list of health professionals in R.C. 2305.51(D). *See* 2023 Am.Sub.S.B. No. 95, effective April 9, 2025. All references to R.C. 2305.51 in this opinion are to the version of the statute in effect on September 13, 2019. *See* 2017 Am.Sub.H.B. 7, effective March 20, 2019.

or patients." R.C. 2305.51(A)(1)(c). A "mental health client or patient" is "an individual who is receiving mental health services from a mental health professional." R.C. 2305.51(A)(1)(b).

{¶ 18} All of the foregoing definitions turn on the meaning of "mental health service," which is defined in R.C. 2305.51(A)(1)(e) as follows:

> "Mental health service" means a service provided to an individual or group of individuals involving the application of medical, psychiatric, psychological, professional counseling, social work, marriage and family therapy, or nursing principles or procedures to either of the following:
>
> (i) The assessment, diagnosis, prevention, treatment, or amelioration of mental, emotional, psychiatric, psychological, or psychosocial disorders or diseases, as described in the most recent edition of the diagnostic and statistical manual of mental disorders published by the American psychiatric association;
>
> (ii) The assessment or improvement of mental, emotional, psychiatric, psychological, or psychosocial adjustment or functioning, regardless of whether there is a diagnosable, pre-existing disorder or disease.

{¶ 19} Davis argues that Dr. Seng is not a "mental health professional" because she is board certified in emergency medicine rather than in psychiatry or psychology. Davis further argues that Dr. Seng did not provide "mental health services" at a "mental health organization" because Leiendecker's goal was to receive mental health treatment at a psychiatric facility and not from Dr. Seng at Diley Ridge.[3] The broad language of the statute does not support Davis's narrow interpretation.

{¶ 20} The definitions in R.C. 2305.51(A)(1) do not limit "mental health services" to treatment at a psychiatric facility, nor do they limit the term "mental health professional" to physicians who specialize in psychiatric services. Among many other things, a "mental health professional" includes someone who applies medical principles or procedures to assess or diagnose a mental disorder, R.C. 2305.51(A)(1)(e)(i), and who is licensed or

---

[3] Davis's focus on Diley Ridge is misplaced. As noted in footnote 1, Diley Ridge was dismissed from the case prior to the summary judgment stage. Moreover, R.C. 2305.51(A)(1)(c) defines "mental health organization" in terms of the professionals that the organization engages, and not in terms of the location at which a patient receives services. ESI is the only entity in this appeal that might qualify as a "mental health organization."

otherwise authorized in Ohio to perform such an assessment or diagnosis in exchange for compensation, R.C. 2305.51(A)(1)(d). To accept Davis's interpretation of the definitions in R.C. 2305.51(A)(1) would require us to add words such as "specialist" to the statute, which we decline to do. *See Armstrong v. John R. Jurgensen Co.*, 2013-Ohio-2237, ¶ 12 (a "court may not delete or insert words, but must give effect to the words the General Assembly has chosen").

{¶ 21} The parties do not dispute that Dr. Seng is licensed to practice medicine in Ohio, and that she was authorized to assess mental health disorders and form treatment plans based on her assessments. Moreover, Dr. Seng testified in her deposition that she provided an average of six or more psychiatric evaluations per month as an emergency room physician, and that she had attended several continuing medical education lectures relating to the assessment of patients who present to an emergency department with psychiatric issues. The parties also do not dispute that Leiendecker came to Diley Ridge seeking psychiatric services, and that Dr. Seng assessed his mental health condition in order to form a treatment plan, albeit a treatment plan that did not ultimately include involuntary hospitalization. Under these specific facts, Dr. Seng falls within the definition of a "mental health professional" providing "mental health services," Leiendecker constitutes a "mental health client or patient" receiving those mental health services, and ESI, as Dr. Seng's employer, falls within the definition of a "mental health organization."

### 3. The plain meaning of "mental health professional" does not nullify other provisions within R.C. 2305.51

{¶ 22} Davis argues that notwithstanding the plain language of the definitions related to "mental health services" in R.C. 2305.51(A)(1)(b) through (e), we cannot hold that Dr. Seng could fall within the meaning of "mental health professional," as the term is used in R.C. 2305.51(B), because we would render R.C. 2305.51(D) meaningless. Davis's argument portrays R.C. 2305.51(B) and (D) as governing two mutually exclusive sets of professionals—mental health specialists and non-specialists—who are facing the same potential liability for the violent acts of a mental health patient. The language of the statute does not present such a dichotomy.

{¶ 23} Davis correctly notes that R.C. 2305.51(B) and (D) use different terminology to identify two categories of health professionals; R.C. 2305.51(B) applies to a "mental health professional" and R.C. 2305.51(D) applies to a "physician, physician assistant, [or]

advanced practice registered nurse." But the fact that the statute identifies two categories of health professionals does not require the conclusion that the categories are mutually exclusive. Davis's exclusivity argument is undermined by the definitions in R.C. 2305.51(A)(1) related to the healthcare professionals in R.C. 2305.51(D):

> (g) "Advanced practice registered nurse" has the same meaning as in section 4723.01 of the Revised Code.
>
> (h) "Hospital" has the same meaning as in section 2305.25 of the Revised Code.
>
> (i) "Physician" means an individual authorized under Chapter 4731. of the Revised Code to practice medicine and surgery or osteopathic medicine and surgery.
>
> (j) "Physician assistant" has the same meaning as in section 4730.01 of the Revised Code.

R.C. 2305.51(A)(1)(g) through (j). These definitions refer the reader to general statutes and chapters of the Revised Code that govern the above health professions as a whole; the definitions do not restrict terms such as "physician" to those who do not or cannot provide mental health services.

{¶ 24} Because Dr. Seng and ESI did not claim immunity under R.C. 2305.51(D) in their motion for summary judgment, we are not called on to determine the applicability of R.C. 2305.51(D) to the particular circumstances of this case. However, we note that it is entirely possible that the same professional could claim immunity under R.C. 2305.51(B) *or* (D) depending on the particular circumstances. Davis cites no authority to support the notion that the ability to assert one type of immunity precludes immunity from any other source. Moreover, R.C. 2305.51 itself provides that the immunities conferred therein "are in addition to and not in limitation of any immunity conferred . . . by any other section of the Revised Code or by judicial precedent." R.C. 2305.51(E).

{¶ 25} Accordingly, the fact that Dr. Seng meets the definition of a "mental health professional" for purposes of R.C. 2305.51(B) does not cause division (D) to be meaningless.

{¶ 26} In sum, to the extent that Dr. Seng and ESI could be held liable for Leiendecker's actions causing serious physical harm or death, the immunity provided in R.C. 2305.51(B) is appliable to Dr. Seng and ESI. We therefore overrule Davis's second assignment of error.

**D. Summary Judgment**

{¶ 27} In her third assignment of error, Davis argues that summary judgment should not have been granted on her claims because questions of material fact remain regarding whether (1) Leiendecker's statements negated Dr. Seng's and ESI's immunity under R.C. 2305.51(B), (2) the immunity conferred in R.C. 2305.51(D) does not apply to Dr. Seng, and (3) Dr. Seng was negligent. Because Dr. Seng and ESI did not claim immunity under R.C. 2305.51(D), we need not consider whether any material facts exist regarding that particular statutory provision. And because the trial court rendered summary judgment based on immunity rather than the elements of Davis's claim, we need not consider the issue of negligence. Accordingly, only the first of Davis's three arguments is relevant to our review of this appeal.

{¶ 28} Davis contends that even if Dr. Seng is a "mental health professional" as defined in R.C. 2305.51(A)(1)(d), summary judgment still should not have been granted in light of the particular circumstances in this case. For summary judgment to be appropriate, the evidence "must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶ 29} Davis directs us to the provision in R.C. 2305.51(B) that removes immunity "only if" the following occurs:

> [T]he client or patient or a knowledgeable person has communicated to the professional or organization an explicit threat of inflicting imminent and serious physical harm to or causing the death of one or more clearly identifiable potential victims[.]

{¶ 30} Davis argues that Dr. Seng and ESI are still potentially liable under R.C. 2305.51(B) because Leiendecker made a threat of imminent physical harm to the staff of Diley Ridge by stating "I'm just going to walk out of here and screw you guys." (Appellant's Brief at 26.) Even if we were to consider the phrase "screw you guys" to be a threat under the circumstances, the words do not explicitly threaten serious physical harm or death. Davis argues that the phrase "is specific in that it states exactly what Leiendecker intended to do," but she does not explain what someone might intend to do when they say, "screw you guys," let alone explain how the phrase could be construed as an explicit threat of fatal or serious physical harm. (Appellant's Brief at 27.)

{¶ 31} Davis fails to establish that Leiendecker's statements negated Dr. Seng's and ESI's immunity under R.C. 2305.51(B). We overrule Davis's third assignment of error.

## IV. Disposition

{¶ 32} Based on the foregoing, we overrule Davis's three assignments of error, and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and EDELSTEIN, JJ., concur.

———————————————