[Cite as *Helton v. Kettering Medical Ctr.*, 2026-Ohio-1476.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| JORDAN HELTON | : | |
| | : | C.A. No. 30484 |
| Appellant | : | |
| | : | Trial Court Case No. 2023 CV 05075 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| KETTERING MEDICAL CENTER | : | Court) |
| | : | |
| Appellee | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on April 24, 2026, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with the opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

MARY K. HUFFMAN, JUDGE

TUCKER, J. and EPLEY, J., concur.

TOBY K. HENDERSON, KAITLYN C. MEEKS, and MEGHAN E. RICHMOND, Attorneys for Appellant
BRIANNA M. PRISLIPSKY, SUSAN BLASIK-MILLER, and SHANNON K. BOCKELMAN, Attorneys for Appellee

HUFFMAN, J.

{¶ 1} Plaintiff-appellant Jordan Helton appeals from the trial court's order granting the motion for leave to file an amended answer of defendant-appellee Kettering Medical Center, doing business as Kettering Health Behavioral Medical Center ("KHBMC"). KHBMC's amended answer raised an affirmative immunity defense under R.C. 2305.51(B) that it had not pleaded in its original answer. Helton further appeals from the trial court's judgment granting KHBMC's second motion for summary judgment, which KHBMC was permitted to file after the trial court's original summary judgment deadline.

{¶ 2} First, in granting KHBMC's motion for leave to amend its answer, the trial court reasoned that Helton should not prevail in this matter simply because KHBMC failed to timely plead a R.C. 2305.51(B) immunity defense. The trial court concluded that Helton had been aware of the defense and had failed to establish that she would suffer actual, substantial, and unfair prejudice by allowing the amendment to KHBMC's answer. However, the burden of proof is on the patient to establish the elements of a R.C. 2305.51(B) cause of action. Thus, the immunity offered under R.C. 2305.51(B) cannot be characterized as an affirmative defense. Because Helton had the burden to establish the elements of R.C. 2305.51(B), KHBMC's amended answer adding an immunity defense was unnecessary and irrelevant. Moreover, KHBMC, without explanation, sought leave under Civ.R. 15 to amend its answer to raise an untimely immunity defense, merely two weeks before trial and fifteen months

after this litigation had commenced. By that point, Helton had expended considerable time, resources, and money to conduct discovery and defend against KHBMC's initial motion for summary judgment. Under these circumstances, the trial court abused its discretion in granting KHBMC's untimely motion for leave to amend its answer.

{¶ 3} Second, in sustaining KHBMC's second summary judgment motion based on the immunity defense, the trial court determined not only that the immunity defense applied to all of Helton's claims but also that there were no genuine issues of material fact that KHBMC was statutorily immune from liability. However, because genuine issues of material fact remained for trial, the trial court erred in granting summary judgment in favor of KHBMC.

{¶ 4} For the reasons outlined below, we reverse the judgment of the trial court and remand this matter for trial on Helton's claims.

## I. Background Facts and Procedural History

{¶ 5} On September 24, 2021, Helton was an eighteen-year-old patient at KHBMC, a mental health treatment facility, where she was receiving in-patient mental health therapy. That same day, Samuel Tumaini was involuntarily admitted to KHBMC with a history of hypersexual behavior. Tumaini had been sexually aggressive in the hospital's emergency department and was considered at high risk for harming himself and attacking others. KHBMC had policies for managing high-risk patients like Tumaini, including 1:1 staff monitoring and the requirement that a staff member always be assigned outside of the enclosed nurses' station in the Behavioral Intensive Care Unit ("BICU").

{¶ 6} Felicia Foster was the nurse on duty when Tumaini arrived in the ward, and she reviewed his "crisis note" intake, which detailed his hypersexual state and inappropriate nature. Upon arrival, he directed his sexual aggression toward Foster, and she documented

3

her initial encounter with him, noting that he was sexually preoccupied, repeatedly tried to touch her, and frequently required redirection.

{¶ 7} Once admitted, Tumaini continued his sexually aggressive behavior by trying to hug and kiss one female patient and then getting into a bed with a second female patient. Foster admonished Tumaini and tried to redirect him, eventually closing the door between halls in an attempt to limit his access to female patients in the locked unit. When those redirection efforts failed, Foster restricted Tumaini to the "Satellite BICU," a dead-end hallway in the BICU where a door could be locked on one end to seclude patients. She then alerted all staff that she had closed the Satellite BICU because Tumaini was a threat to female patients. Foster instructed the BICU staff that if Tumaini was out of his room, a staff member was required to always be with him in order to keep the other female patients safe.

{¶ 8} Later, however, CCTV footage showed Nurse Avis Kelly leaving the Satellite BICU, opening the locked door between the Satellite BICU and the rest of the unit, and allowing Helton to walk into the Satellite BICU where Tumaini was standing outside of the nurse's station, which at that time was staffed by Nurse Rebecca Doucette.

{¶ 9} Once Kelly permitted Helton to enter the Satellite BICU, she closed the door behind her, locking Helton in the Satellite BICU with Tumaini. Tumaini approached Helton and walked next to her down the corridor. Doucette, who was seated inside the nurse's station, acknowledged Tumaini and Helton through an open door as they stood in the hallway. Tumaini then entered the nurse's station where he inappropriately touched Doucette. Doucette struggled with Tumaini and pushed him into the hallway with Helton, closing the nurse's station door behind her and leaving Helton in the hallway with him.

{¶ 10} After witnessing Tumaini's interaction with Doucette, Helton tried to leave the Satellite BICU, but the door was locked. Tumaini followed Helton and placed his hands on

her breasts and pushed her against the wall. He tried to pull Helton into his room, but she resisted, yelling "Stop!" and pushing him away. When Helton broke free from Tumaini, Foster, who heard Helton's screams, appeared from behind the locked BICU door and helped Helton to escape.

{¶ 11} Doucette, hearing the commotion, emerged from the nurse's station and walked down the hall where Tumaini again approached her. She activated her panic alert button, and within moments, several employees subdued Tumaini. After KHBMC's staff responded to Doucette's alarm, the police were notified. Tumaini was arrested and eventually convicted of two counts of sexual imposition and one count of gross sexual imposition.

{¶ 12} Helton was discharged from KHBMC after the incident with Tumaini. No KHBMC staff member documented the event in her medical record or notified her treating physician. Initially, Helton denied recalling the incident but later prepared a written witness statement for the police. Although nurse witnesses heard the incident, which was captured on video, KHBMC maintained that because Helton, who was medicated at the time, initially denied the event, no intervention or further action was needed on her behalf.

{¶ 13} In September 2023, Helton filed her complaint against KHBMC, alleging claims for negligent security, negligence per se, negligent training and supervision, and respondeat superior. She sought punitive damages for reckless, willful, and wanton conduct. Helton's claims were based on KHBMC's duty to protect her and its breach of that duty when Tumaini sexually assaulted her while she was under KHBMC's care. In its answer, KHBMC asserted five affirmative defenses, but none was based on immunity.

{¶ 14} The trial court held a scheduling conference on December 14, 2023. The summary judgment and discovery deadlines were set for September 30, 2024, and December 9, 2024, respectively. Trial was scheduled for January 6, 2025.

{¶ 15} Discovery included the parties exchanging Rule 26 initial disclosures in which KHBMC never indicated reliance on an immunity defense. The parties then completed nine fact witness depositions between February and July 2024. They also relied on other discovery methods.

{¶ 16} In September 2024, before the close of the summary judgment deadline, KHBMC moved for partial summary judgment, arguing that Helton had no evidence to support her punitive damages claim. KHBMC did not address her substantive claims. The trial court overruled the motion, finding that there was evidence from which a reasonable jury could determine that Helton was entitled to punitive damages.

{¶ 17} Thereafter, no party moved to extend the trial deadlines, and discovery closed on December 9, 2024. In the meantime, the parties prepared for trial, and only the preparation of jury instructions remained. On December 16, 2024, three weeks before trial, the parties filed a joint pretrial statement identifying contested and uncontested facts, as well as each party's legal position. In the joint statement, Helton reiterated her negligence per se claim under R.C. 5122.29(B)(2) and cited the statutory scheme of establishing liability under R.C. 2305.51. It was in the joint statement that for the first time, KHBMC cited R.C. 2305.51(B) as an immunity shield and set forth its intention to move for a directed verdict based on its immunity.

{¶ 18} On December 23, 2024, two weeks before trial, KHBMC filed its motion to amend its answer pursuant to Civ.R. 15(B) to add an immunity defense under R.C. 2305.51(B). Helton opposed KHBMC's proposed amendment as untimely, as KHBMC

6

had hitherto not raised the defense. The trial court granted KHBMC's motion to amend on the basis of Civ.R. 15(A) and (B), finding that Helton should not prevail simply because KHBMC failed to plead the immunity defense when Helton had been aware of the defense. The court further reasoned that Helton had failed to establish that she would suffer actual, substantial, and unfair prejudice by allowing the amendment to KHBMC's answer.

{¶ 19} Upon being granted leave to amend, KHBMC filed its amended answer on December 31, 2024. The trial court permitted the late amendment adding the immunity defense and then sua sponte vacated the trial date, reopened discovery related to the immunity defense, and established a briefing schedule for a second motion for summary judgment based on KHBMC's newly asserted immunity defense.

{¶ 20} On February 25, 2025, KHBMC moved for summary judgment a second time— this time arguing absolute immunity under R.C. 2305.51(B). In support, KHBMC argued there was no evidence that Tumaini made a threat to Helton explicitly, and thus it was immune from liability. Helton opposed KHBMC's motion, arguing that immunity was not applicable and that genuine issues of material fact precluded summary judgment.

{¶ 21} The trial court ultimately sustained KHBMC's second summary judgment motion. The court determined that KHBMC's immunity defense applied to this case and that there were no genuine issues of material fact that KHBMC was statutorily immune from liability. In concluding that KHBMC was entitled to judgment as a matter of law on all of Helton's claims, the court reasoned that Tumaini's series of assaults could not lead a reasonable juror to find that Tumaini or any other knowledgeable person had communicated an explicit threat of inflicting imminent and serious physical harm to Helton. The court opined that a perceived threat to a general group of people did not constitute an explicit threat

against a clearly identifiable potential victim (such as Helton), as required to overcome immunity under R.C. 2305.51(B).

{¶ 22} Helton appealed.

## II. Assignments of Error

{¶ 23} Helton asserts two assignments of error, one related to KHBMC's motion for leave to amend its answer and the other related to its second motion for summary judgment.

*Motion for Leave to File an Amended Answer*

{¶ 24} In her first assignment of error, Helton contends that the trial court abused its discretion in granting KHBMC leave to amend its answer to include a statutory immunity defense under R.C. 2305.51(B). Helton asserts that the court abused its discretion by permitting KHBMC to amend its answer for the first time only two weeks before trial and after extensive pretrial litigation, the close of discovery, and the summary judgment deadline. She argues that KHBMC waived the immunity defense. Helton further argues that KHBMC's motion for leave to amend its answer was untimely and sought without any justification, causing unfair, undue, actual, and substantial prejudice to her. For these reasons and more, we agree.

{¶ 25} Based on Civ.R. 15(B), KHBMC sought to amend its answer in order to assert an affirmative immunity defense under R.C. 2305.51(B). In granting KHBMC's motion for leave to file an amended answer, the trial court relied on Civ.R. 15(A) and 15(B), reasoning that Helton was aware of the subject immunity defense and the defense was discussed among the parties during the December 9 final pre-trial conference. According to the court, Helton had failed to establish that she would suffer actual, substantial, and unfair prejudice if the court allowed KHBMC to amend its answer.

8

{¶ 26} Initially, we note that KHBMC sought leave to amend its answer under Civ.R. 15(B) and that the trial court cited Civ.R. 15(B) in granting KHBMC's motion. Civ.R. 15(B) allows for amendments in the pleadings to conform to the evidence:

When issues not raised by the *pleadings are tried by express or implied consent of the parties*, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

(Emphasis added.) *Id.*

{¶ 27} However, Civ.R. 15(B) governs the amendment of a pleading to conform to the evidence *at trial*. For that reason, it has no application in a case, such as this one, where there has been no trial. *Thomas v. Res. Network*, 2011-Ohio-5857, ¶ 8 (9th Dist.), citing *Merrill Lynch Mtge. Lending, Inc. v. 1867 W. Mkt., L.L.C.*, 2007-Ohio-2198, ¶ 11 (9th Dist.). Even though KHBMC sought leave to amend its answer under only Civ.R. 15(B), we also consider whether Civ.R. 15(A) would have supported an amendment to KHBMC's answer.

9

**{¶ 28}** Civ.R. 15(A) sets forth the general rules for amending a pleading:

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. *The court shall freely give leave when justice so requires*. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within fourteen days after service of the amended pleading, whichever is later.

(Emphasis added.) *Id.*

**{¶ 29}** The language of Civ.R. 15(A) makes clear that a court must freely give leave to amend a pleading when "justice so requires." This is because the spirit of the Civil Rules contemplates the resolution of cases on their merits and not on pleading deficiencies. *Peterson v. Teodosio*, 34 Ohio St. 2d 161, 175 (1973). However, a party "must move to amend under Civ.R. 15(A) in a timely manner." *Cunningham v. Cunningham*, 2002-Ohio-2647, ¶ 16 (9th Dist.). Additionally, "[w]hile the rule allows for liberal amendment, motions to amend pleadings pursuant to Civ.R. 15(A) should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party." *Turner v. Cent. Local School Dist.*, 85 Ohio St. 3d 95, 99 (1999), citing *Hoover v. Sumlin*, 12 Ohio St. 3d 1 (1984), paragraph two of syllabus.

**{¶ 30}** A trial court's decision of whether to grant a motion for leave to amend a complaint is within its discretion and will not be reversed on appeal absent an abuse of

10

discretion. *Turner* at 99, citing *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 121-22 (1991); *Rockford Homes, Inc. v. Handel*, 2007-Ohio-2581, ¶ 54 (5th Dist.). "A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable." *Amesse v. Wright State Physicians, Inc.*, 2018-Ohio-416, ¶ 22 (2d Dist.), citing *State v. Renner*, 2013-Ohio-5463, ¶ 24 (2d Dist.).

{¶ 31} KHBMC sought leave to amend its answer to assert an affirmative immunity defense under R.C. 2305.51(B). This statute governs the liability of mental health professionals and organizations, such as KHBMC, for the violent behavior of mental health clients or patients. A "mental health organization" is an organization that engages one or more mental health professionals to provide mental health services to one or more mental health clients or patients. R.C. 2305.51(A)(1)(c). It is undisputed in this case that KHBMC is a mental health organization subject to the provisions of R.C. 2305.51(B).

{¶ 32} "An affirmative defense is '[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true.'" *Durig v. Youngstown*, 2025-Ohio-4719, ¶ 25, quoting *Black's Law Dictionary* (12th Ed. 2024). "Statutory immunity is an affirmative defense, and if it is not raised in a timely fashion, it is waived." *Turner*, 85 Ohio St. 3d at 97, citing *State ex rel. Koren v. Grogan* , 68 Ohio St.3d 590, 594 (1994); Civ.R. 8(C) and 12(H); *see also Jim's Steak House, Inc. v. City of Cleveland*, 81 Ohio St. 3d 18, 20 (1988) (affirmative defenses, other than those listed in Civ.R. 12(B), are waived if not raised in the pleadings or in an amendment to the pleadings under Civ.R. 8 or 15). An affirmative defense is also "a complete defense that renders the plaintiff's ability to establish a prima facie case irrelevant." *See Durig* at ¶ 25, citing *Turner* at 98. As would be expected, the defendant asserting an affirmative defense has the burden of proof to establish the defense. *Szuch v. FirstEnergy Nuclear Operating Co.*, 2016-Ohio-

620, ¶ 10, quoting *MatchMaker Internatl., Inc. v. Long*, 100 Ohio App.3d 406, 408 (9th Dist. 1995).

{¶ 33} In general, R.C. 2305.51 governs the liability of mental health professionals and organizations. R.C. 2305.51(B) sets forth the requirements that must be met before a mental health organization may be liable for harm caused by a mental health patient:

A mental health professional or mental health organization may be held liable in damages in a civil action, or may be made subject to disciplinary action by an entity with licensing or other regulatory authority over the professional or organization, for serious physical harm or death resulting from *failing to predict, warn of, or take precautions* to provide protection from the violent behavior of a mental health client or patient, *only if the client or patient or a knowledgeable person has communicated to the professional or organization an explicit threat of inflicting imminent and serious physical harm to or causing the death of one or more clearly identifiable potential victims*, the professional or organization has reason to believe that the client or patient has the intent and ability to carry out the threat . . . .

(Emphasis added.) *Id.* "R.C. 2305.51(B) goes on to provide that the mental health professional or organization can be liable only if they fail to take one or more of the four following actions: (1) emergency hospitalization under R.C. 5122.10, (2) voluntary or involuntary hospitalization under R.C. Ch. 5122, (3) implementation of an adequate treatment plan concurrent with initiating arrangements for a second opinion risk assessment, and (4) communicating the threat to potential victims and law enforcement." *Davis v. Diley Ridge Med. Ctr.,* 2025-Ohio-1940, ¶ 14 (10th Dist.), citing R.C. 2305.51(B)(1) through (4).

{¶ 34} Under R.C. 2305.51, "'mental health client or patient' means an individual who is receiving mental health services from a mental health professional or organization." R.C. 2305.51(A)(1)(b). "'Knowledgeable person' means an individual who has reason to believe that a mental health client or patient has the intent and ability to carry out an explicit threat of inflicting imminent and serious physical harm to or causing the death of a clearly identifiable potential victim or victims and who is either an immediate family member of the client or patient or an individual who otherwise personally knows the client or patient." R.C. 2305.51(A)(1)(f).

{¶ 35} Liability under R.C. 2305.51 has been interpreted in conjunction with R.C. 5122.29, which governs patients' rights. "R.C. 5122.29(B)(2) provides that a patient in a mental health institution has a right to reasonable protection from the violent conduct of others." *Campbell v. Ohio State Univ. Med. Ctr.*, 2006-Ohio-1192, ¶ 11. In *Campbell*, a patient of a mental health organization injured the plaintiff, another patient at the facility. The Supreme Court of Ohio considered whether the plaintiff needed to meet the requirements of R.C. 2305.51 to bring a cause of action against the organization for negligence for breaching its duty under R.C. 5122.29(B)(2) to protect her from assault and battery. *Campbell* at ¶ 1.

{¶ 36} The facts at issue in *Campbell* were fairly uncomplicated. In 1999, a patient at Harding Hospital, a mental health organization operated by the Ohio State University Medical Center, attacked and injured another patient. *Id*. at ¶ 2. The following day, the same patient physically attacked and severely injured a second patient at the hospital, the plaintiff. *Id*. The plaintiff argued that R.C. 5122.29(B)(2) created a duty of the hospital to protect her from an assault and battery by another patient. *Id*. at ¶ 3-8. The Court considered whether the plaintiff needed to meet the requirements of R.C. 2305.51 to maintain her action, irrespective of such a duty under R.C. 5122.29(B)(2). *Id*. at ¶ 9.

13

**{¶ 37}** The *Campbell* court was thus required to resolve the tension between the duty of an mental health organization to protect its patients under R.C. 5122.29(B)(2) and the requirement that the elements set forth in R.C. 2305.51(B) must be satisfied before an organization can be found liable for harm caused by a patient. *Id*. at ¶ 11. The plaintiff argued that the provisions of R.C. 2305.51 conflicted with the hospital's statutory duty under R.C. 5122.29(B)(2) to protect her from injury as a result of the actions of another patient. *Id*. at ¶ 13. The plaintiff maintained that the hospital violated the statutorily mandated right of a hospitalized or committed patient "to be treated with consideration and respect for his privacy and dignity, including without limitation . . . reasonable protection from assault or battery by any other person." R.C. 5122.29(B)(2).

**{¶ 38}** The Supreme Court, however, disagreed. The Court declared that R.C. 5122.34(B) expressly provides that a mental health organization is not liable for harm that results from failing to protect a patient from another patient unless the injured patient establishes liability under R.C. 2305.51. *Campbell*, 2006-Ohio-1192, at ¶ 13. R.C. 5122.34(B) states:

> Regardless of whether any affirmative action has been taken under this chapter with respect to a mental health client or patient and except as otherwise provided in section 2305.51 of the Revised Code, no person shall be liable for any harm that results to any other person as a result of failing to disclose any confidential information about the mental health client or patient, or failing to otherwise attempt to protect such other person from harm by such client or patient.

**{¶ 39}** The Supreme Court held that "when a patient of a mental-health institution is assaulted or battered by another patient, the institution may be held liable for harm that

14

results only if *the injured patient* establishes liability under R.C. 2305.51." *Campbell* at ¶ 15. The Court further explained that "unless liability under R.C. 2305.51 is established, a mental-health institution may not be held liable for failure to protect a person from harm caused by one of its patients. The General Assembly has made R.C. 2305.51 the exclusive means by which a mental-health patient may establish liability for harm caused by another patient, notwithstanding the duty to protect patients imposed by R.C. 5122.29(B)(2)." *Campbell* at ¶ 19. As Helton's case proves, though, the *Campbell* decision has caused confusion for both courts and practitioners.

{¶ 40} It is on the basis of *Campbell*'s holding that KHBMC sought leave to amend its answer under Civ.R. 15 to plead an affirmative immunity defense under R.C. 2305.51(B). Immunity defenses are waived unless they are properly raised. If the allegations in a complaint implicate an immunity defense, the defendant "must expressly raise that defense by a prepleading motion under Civ.R. 12(B), affirmatively in a responsive pleading under Civ.R. 8(C), or by amendment under Civ.R. 15." *Durig*, 2025-Ohio-4719, at ¶ 33, citing *Supportive Solutions*, 2013-Ohio-2410, ¶ 19. If the defendant fails to take such action, it has waived its immunity defense. *See id*. "Civ.R. 15(A) is a proper vehicle to raise an affirmative defense to avoid waiver." *Durig* at ¶ 35, citing *Supportive Solutions* at ¶ 19. "When a defendant fails to amend an answer as a matter of course within 28 days after it is served, Civ.R. 15(A) provides that courts 'shall freely give leave' to amend the answer 'when justice so requires.'" *Id*.

{¶ 41} The problem with KHBMC's use of *Campbell* to support its late assertion of an immunity defense is that *Campbell* concluded that *the injured patient* must establish liability under R.C. 2305.51. *Campbell*, 2006-Ohio-1192, at ¶ 15. *Campbell* places the burden of proof on the patient to establish the elements of a R.C. 2305.51(B) cause of action. This, in

turn, makes it impossible to characterize R.C. 2305.51(B) as an affirmative defense, as asserted by KHBMC. Since Helton had the burden to establish the elements under R.C. 2305.51(B), KHBMC's amended answer to add an immunity defense was unnecessary and irrelevant.

{¶ 42} Still, we want to emphasize that even if an affirmative immunity defense had been available (which it was not), KHBMC was not relieved of its duty to timely raise such a defense. The trial court abused its discretion in allowing KHBMC to amend its answer to add an immunity defense on the eve of trial. "[A] trial court may reasonably find a movant's unjustified and prejudicial inaction as grounds to deny the movant leave to amend a pleading under Civ.R. 15(A) when the movant had sufficient information to raise the subject of the proposed amendment before the opposing party expended time and resources responding to timely raised issues." *Durig* at ¶ 38, citing *Turner*, 85 Ohio St.3d at 98-99 (trial court abused its discretion in granting a motion for leave to amend a pleading under Civ.R. 15(A) when the movant failed to justify its failure to timely raise an "obvious" affirmative defense in its answer to the complaint or raise it at least before the plaintiffs expended time and resources opposing the movant's motion for summary judgment). *See also Jontony v. Colegrove*, 2012-Ohio-5846, ¶ 21, 29 (8th Dist.) (trial court did not abuse its discretion in denying the City of Strongsville leave to amend its answer under Civ.R. 15(A) when the affirmative defense of immunity was "an obvious defense" from the face of the complaint, yet the city failed to assert that defense on its own behalf); *Schweizer v. Riverside Methodist Hosps.*, 108 Ohio App.3d 539, 545-546 (10th Dist. 1996) (trial court did not abuse its discretion in denying the plaintiff leave under Civ.R. 15(A) to amend his complaint when the newly asserted theory was available at the onset of the litigation); *Leo v. Burge Wrecking, L.L.C.*, 2017-Ohio-2690, ¶ 13-15 (6th Dist.) (trial court did not abuse its discretion in

16

concluding that movant's unjustified delay supported denying leave to amend his complaint under Civ.R. 15(A) when movant knew or should have known about the subject of the amendment long before he filed his motion for leave to amend).

{¶ 43} In *Turner*, the Supreme Court of Ohio explained that a party need not predict or assume that the opposing party intended to rely on an affirmative defense when the opposing party had not asserted the defense in a timely fashion:

> If [defendant] intended to rely on statutory immunity, it had the responsibility to assert it in a timely fashion. It was perfectly reasonable for appellants to assume that in the absence of [defendant's] failure to assert this defense, and its failure to argue this issue in its first motion for summary judgment, it intended to waive the defense. See *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 6, 12 OBR 1, 5, 465 N.E.2d 377, 381: "As a tactical matter, the very possibility of waiver makes it extremely important and prudent, for both client and counsel, to plead all defenses as early as possible." Cf. *Hill v. Urbana* (1997), 79 Ohio St.3d 130, 141, 679 N.E.2d 1109, 1117 (Moyer, C.J., dissenting), citing *Gallagher,* 74 Ohio St.3d at 436, 659 N.E.2d at 1240, and *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 122, 679 N.E.2d 1099, 1104: "Parties, through their counsel, are responsible for shaping the trial through the issues they select for resolution; a trial court [and opposing counsel] cannot reasonably be expected to anticipate the existence of an argument that is not raised, nor may we allow an opposing party to bear the loss caused by poor litigation of the trial by counsel for the party responsible."

*Turner* at 98-99.

**{¶ 44}** Based on the reasoning in *Durig* and *Turner*, even if KHBMC had the right to rely on an immunity defense (had one been available), it should have included the defense in its initial answer or should have attempted to amend its answer to include the defense prior to its initial motion for summary judgment. *See Turner* at 99.

**{¶ 45}** Instead, KHBMC sought leave to amend its answer under Civ.R. 15 to raise such a defense fifteen months after this litigation had commenced, after the discovery and summary judgment deadlines had expired, after KHBMC had already moved for summary judgment, and after the matter had been set for trial. By that point in time, Helton had expended considerable time, resources, and money to conduct discovery and defend against KHBMC's initial motion for summary judgment. These circumstances were prejudicial to her. *See Turner*, 85 Ohio St.3d at 99.

**{¶ 46}** Moreover, KHBMC failed to provide a rationale for its failure to assert an immunity defense before then, particularly when it should have attempted to amend its answer to include the defense prior to its initial motion for summary judgment. *See id*. Put differently, if KHBMC had intended to rely on statutory immunity, it had the responsibility to assert it in timely fashion to avoid waiving it. While we find that prejudice to Helton was a relevant consideration in this case, we do not find that it was the only consideration. KHBMC's undue delay in filing its motion to amend was substantial and unexplained. Further still, the failure of KHBMC staff to document the incident between Helton and Tumaini in the hallway likely violated Ohio statutory requirements for maintaining accurate and complete medical records. That, coupled with KHBMC's failure to notify Helton's treating physician of the incident and followed by its immediate discharge of Helton from the unit, individually and collectively suggested that KHBMC acted in bad faith.

{¶ 47} In our view, KHBMC had an obligation to raise an immunity defense, had one been available, in a prompt manner to minimize the impact on Helton and the litigation efforts, but it failed to do so. *See Durig*, 2025-Ohio-4719, at ¶ 41. When KHBMC failed to assert a purported immunity defense at the outset, it was reasonable for Helton to assume that it intended to waive the defense. *See Turner* at 98-99. It was therefore unreasonable that two weeks before trial, after the close of discovery and the summary judgment deadline, the trial court granted KHBMC's motion for leave to amend its answer and, acting sua sponte, reopened discovery and ordered KHBMC to again file for summary judgment. KHBMC was obligated to inform Helton of its intention to rely on an immunity defense, and its failure to timely assert the defense or obtain leave to amend its answer earlier in the proceedings would have constituted waiver of such defense.

{¶ 48} In summary, we cannot say that justice required an amendment to KHBMC's answer. We conclude that the trial court abused its discretion in permitting KHBMC to amend its answer to add an irrelevant immunity defense so that KHBMC could take another bite at the apple and file a second summary judgment motion. Helton's first assignment of error is sustained.

*Second Motion for Summary Judgment*

{¶ 49} In her second assignment of error, Helton argues that the trial court improperly granted summary judgment to KHBMC based on the untimely immunity defense. She contends not only that the trial court erred in finding immunity applied to the facts in this case but also that the court erred in finding that no genuine issues of material fact remained concerning her claims and KHBMC's purported immunity. We agree.

{¶ 50} Pursuant to Civ.R. 56(C), a movant is entitled to summary judgment when that party demonstrates that there is (1) no issue as to any material fact; (2) that the moving party

19

is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the non-moving party. *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, ¶ 22 (2d Dist.). "Summary judgment is a potentially useful, but extraordinary, procedure wherein the trial of issues of fact made up by the pleadings is avoided." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St. 3d 157, 161 (1990).

{¶ 51} Because summary judgment is "a shortcut through the normal litigation process by avoiding a trial," the burden of demonstrating that no genuine issues exist as to any material fact strictly falls upon the moving party requesting summary judgment. *Id.*; *see also Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66 (1978). Once the moving party has satisfied its burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The nonmoving party cannot rely upon the mere allegations or denials in the pleadings but must give specific facts showing that there is a genuine issue. Civ.R. 56(E); *Accord Geloff v. R.C. Hemm's Glass Shops, Inc.*, 2021-Ohio-394, ¶ 14 (2d Dist.).

{¶ 52} Summary judgment "'must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion.'" *Murphy v. Reynoldsburg*, 65 Ohio St. 3d 356, 358-59 (1992), quoting *Norris v. Ohio Std. Oil Co.*, 70 Ohio St.2d 1, 2 (1982). We review the trial court's ruling on a summary judgment motion de novo. *Schroeder v. Henness*, 2013-Ohio-2767, ¶ 42 (2d Dist.). "De novo review means the reviewing court independently analyses the record while giving no deference to the trial court's decision." *Davis*, 2025-Ohio-1940, at ¶ 7

20

(10th Dist.), citing *Johnson v. Am. Italian Golf Assn. of Columbus*, 2018-Ohio-2100, ¶ 13 (10th Dist.).

{¶ 53} In the instant matter, the trial court equally erred in granting summary judgment under the facts of this case because genuine issues of material fact remained for trial. Although we acknowledge that R.C. 2305.51(B) protects mental health organizations from liability for patient violence, the immunity offered is not automatic. A plaintiff, while bearing the burden, still has the opportunity to prove that the organization is not immune and that a jury is entitled to hear the evidence.

{¶ 54} Here, the staff at KHBMC knew that Tumaini was a sexual assault threat to female patients like Helton because he had inappropriately touched female staff members and other female patients. This was the precise reason that Nurse Foster took action to isolate Tumaini away from others in the Satellite BICU; alerted all staff that she closed the Satellite BICU because Tumaini was a threat to female patients; and instructed the BICU staff that if Tumaini was out of his room, a staff member was required to be with him at all times in order to keep other patients safe.

{¶ 55} Despite these efforts, there was evidence that KHBMC's other staff members specifically failed to follow these precautions after they were implemented. They allowed Helton to enter the lion's den with Tumaini (even though he had already sexually assaulted other female patients and staff members) and locked her in a hallway alone with him until her screams were heard—all the while failing to maintain accurate medical records by not documenting the incident, failing to take any proper action on her behalf, and failing to notify her treating physician, merely discharging her afterwards instead.

{¶ 56} In granting summary judgment in KHBMC's favor based on the immunity defense, the trial court essentially reasoned that KHBMC was not liable for Helton's alleged

21

harm because R.C. 2305.51 immunity applies to any claim based on an attack by a mental health patient. We disagree with this broad interpretation.

{¶ 57} The purpose of the immunity offered by R.C. 2305.51 is to shield mental health organizations from liability when a patient's violent actions against others are not reasonably foreseeable. In other words, R.C. 2305.51(B) is intended to apply to cases where a patient's violent actions against others are beyond the organization's reasonable control. Based on the record before us, the factual scenario in this case was not one in which KHBMC's staff was unable to predict, warn, or take precautions to provide protection from Tumaini's violent behavior. Nor were Tumaini's actions against Helton unforeseeable or beyond KHBMC's reasonable control. KHBMC's staff knew that Tumaini was a threat to Helton as female patient. They, in fact, predicted, warned, and took precautions to protect female patients like Helton. But they allegedly failed to properly execute those precautions.

{¶ 58} The trial court also rationalized that even though KHBMC's staff was aware of that Tumaini was a threat to all females in the locked and confined unit, KHBMC was not liable for Tumaini's alleged assault of Helton because he had not explicitly threatened her. In support of its reasoning, the trial court cited the following cases in which other courts had determined that the mental health organizations and professionals were immune from liability for the physical harm or death caused by their mental health patients.

{¶ 59} First, in *Green v. Logan Cty.*, 2008 WL 696688 (S.D.Ohio Mar. 13, 2008), a juvenile offender (a mental health patient) left a group home after undergoing mental health treatment, unlawfully entered a nearby home, and killed the home's occupant. The court found that the mental health professional treating the offender was immune from liability because the offender, though suspected of being capable of violence, had not made an explicit threat against a clearly identifiable person. *Id.*

22

{¶ 60} Next, in *Stewart v. N. Coast Ctr.*, the victim and the perpetrator-ex-boyfriend were both mental health patients at the same outpatient treatment center, but their relationship status was not known by the staff. *Stewart v. N. Coast Ctr.*, 2006-Ohio-2392, ¶ 6-8 (11th Dist.). The mental health professional treating the perpetrator did not initially believe that he presented a threat of harm to himself or others. *Id.* at ¶ 12. At some point, the perpetrator indicated that he was extremely angry about his life situation and threatened to blow up his car and kill himself, but he refused hospitalization. *Id*. at ¶ 15-16. Three days later, the perpetrator killed the victim by shooting at her vehicle and running her off the road when she was on her way home from work, and then he killed himself. *Id*. at ¶ 19. The court determined that the treatment center was not liable for the perpetrator's actions because he had not communicated an explicit threat of imminent or serious harm toward the decedent before killing her. *Id*. at ¶ 53.

{¶ 61} Finally, in *Campbell*, as described above, a mental health patient was attacked and injured by another patient, who had harmed another patient the previous day. *Campbell v. Ohio State Univ. Med. Ctr.*, 2004-Ohio-6072, ¶ 2 (10th Dist.). The victim asserted a medical negligence claim, alleging that the mental health hospital breached the standard of care by failing to protect her from the offender when he had a known propensity for violent behavior and had assaulted another patient the day before assaulting her. *Id.* at ¶ 11. The victim argued that the offender, given his history, should not have been allowed to mingle unrestrained with other patients. *Id*. Arguing for summary judgment, the hospital presented expert testimony via affidavit to establish that its conduct—which included allowing the offender relatively unrestrained access to patient common areas of the hospital—had not breached the applicable standard of care it owed the victim. *Id*. at ¶ 12. In opposition to the motion for summary judgment, the victim essentially filed only her own deposition testimony.

*Id*. The trial court concluded that even if the offender had assaulted another patient the day before and the hospital failed to recognize the danger he posed to others, there was no evidence that the offender had communicated an explicit threat of inflicting harm to the victim (a clearly identifiable person), and thus the hospital was immune from liability. *Id*. ¶ 16.

{¶ 62} In each of these cases, the offenders had made no explicit threats toward their victims. However, unlike the identifiable female patient locked in a confined unit with Tumaini in this case, the victims in *Green* and *Stewart* were not foreseeable because (1) there had been no communication regarding threats by the offenders and (2) the offenders' harmful actions occurred outside of the mental health organizations and were thus outside of the organizations' reasonable control. Relatedly, in *Campbell*, despite the offender harming a different patient the previous day, he had not communicated a threat toward any other person or the mental health organization. The organization apparently did not recognize the risk posed by the offender because no warning or precautions were taken and because he remained free to mingle unrestrained with other patients before unexpectedly attacking the victim. In *Green*, *Stewart*, and *Campbell*, based on the lack of threatening communication by the perpetrators, absence of foreseeability of the threat they posed, and occurrence of the harm outside the reasonable control of the mental health organizations, the organizations took no precautions to provide protection from the offenders' violent behavior and were ultimately found to be immune.

{¶ 63} KHBMC sought summary judgment solely because neither Tumaini nor a knowledgeable person had communicated to KHBMC an explicit threat that Tumaini was imminently going to inflict serious physical harm to Helton. The trial court granted summary judgment on the sole basis that there was "no evidence that an explicit threat of inflicting

24

imminent and serious harm to or causing the death of Ms. Helton was communicated to KHBMC by [Tumaini] or a knowledgeable person."

{¶ 64} In this case, however, there was evidence that Tumaini posed an immediate threat to all women at KHBMC, as he inappropriately interacted in a sexual manner not only with KHBMC's female staff members but also with several other female patients. As a result, Nurse Foster took action to isolate Tumaini in the Satellite BICU, precisely because he was a threat to all female patients, including Helton. While we recognize that there was no evidence that Tumaini explicitly threatened Helton by name or otherwise, she was a clearly identifiable potential victim because Tumaini was indiscriminate in his sexual assault of other women in the locked and confined unit.

{¶ 65} For this reason, we find that the trial court was too narrow in its interpretation of R.C. 2305.51(B)'s language stating that liability for a patient's attack on another patient can attach to a mental health organization "only if the . . . patient or a knowledgeable person has communicated to the . . . organization an explicit threat of inflicting imminent and serious physical harm to . . . one or more clearly identifiable potential victims." Here, there was evidence that Tumaini had already assaulted other females in the unit and that protective measures for female patients had been implemented but allegedly were not followed. Thus, there was, at minimum, an issue of fact of whether Tumaini's ongoing conduct constituted an explicit threat of the imminent infliction of serious physical harm and whether Helton, as a female patient, was a clearly identifiable potential victim. It was therefore up to a jury to decide whether KHBMC was liable for Helton's physical harm. Since KHBMC asserted that it was entitled to summary judgment only based on the absence of an explicit threat of imminent physical harm to a clearly identifiable person and since the trial court's summary

25

judgment decision was premised solely on this issue, there is not a sufficient record to consider whether KHBMC was otherwise entitled to summary judgment.

**{¶ 66}** We agree with Helton that the trial court also erred in granting summary judgment to KHBMC, as genuine issues of material fact remained for trial. Helton's second assignment of error is sustained.

### III. Conclusion

**{¶ 67}** Based on the foregoing, we reverse the trial court's judgment and remand this matter to the trial court for a trial on Helton's claims.

. . . . . . . . . . . . .

TUCKER, J., and EPLEY, J., concur.